THORP SALES CORPORATION, a corporation, Plaintiff,

v.

DOLESE BROTHERS CO., a general partnership composed of the Dolese Company, Inc., a corporation and Roger M. Dolese, an Individual, as general partner, Defendants.

No. CIV–76–0880–T.

United States District Court, W. D. Oklahoma.

Jan. 18, 1978.

John N. Hermes of McAfee, Taft, Marks, Bond, Rucks & Woodruff, Oklahoma City, Okl., for plaintiff.

Edward H. Moler, Barefoot, Moler & Claro, Oklahoma City, Okl., for defendants.

## MEMORANDUM OPINION

RALPH G. THOMPSON, District Judge.

Plaintiff, Thorp Sales Corporation (Thorp Sales), a Wisconsin corporation, with its principal place of business in Wisconsin, brings this action against defendant Dolese Brothers Co. (Dolese), a general partnership composed of a Delaware corporation with its principal place of business in Oklahoma and an individual citizen of Oklahoma. The amount in controversy is in excess of $10,000 and this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332.

Thorp Sales claims a security interest in five Wabco Haulpak Rear Dump Trucks which are in the possession of Dolese. Thorp Sales seeks alternatively possession of the trucks or a judgment against Dolese for the amount of unpaid indebtedness secured by the trucks. Dolese admits that the trucks are now worth more than the unpaid indebtedness Thorp Sales claims they secure. Dolese also admits to having

possession of the trucks but denies the validity of plaintiff's security interest. The case is now before the Court on a Motion for Summary Judgment filed on behalf of Thorp Sales and a Motion for Partial Summary Judgment filed on behalf of Dolese.

### Facts

On June 30, 1973, Louis J. Dettore, now deceased, purchased five Wabco Haulpak Trucks and other vehicles from Michigan Trenching Service. This transaction is evidenced by an installment sales contract and security agreement which is attached to the complaint as Exhibit "A". This agreement will hereinafter be referred to as the "first agreement". On July 24, 1973, Dettore purchased certain other vehicles and equipment from Southeastern Kentucky Contractors. This "second agreement" is evidenced by a retail installment contract and security agreement which is attached to the complaint as Exhibit "B".

On the face of the first agreement there appears an assignment from Michigan Trenching to "ITT Thorp Corporation with its home office at Thorp, Wisconsin or such one of its subsidiary or affiliated corporations which will purchase this Installment Sales Contract." The assignment was made without recourse subject to certain warranties from seller to assignee. The assignment is dated June 30, 1973, the same day as the sale.

The second agreement contains, on its face, an assignment from Southeastern to Thorp Sales. Defendant admits that plaintiff is assignee of this agreement.

In paragraph 5 of the complaint, plaintiff pleads that Thorp Commercial Corporation is a subsidiary of ITT Thorp Corporation. Defendant's answer to this portion of the complaint simply states that it is "without knowledge or information sufficient to form a belief as to the truth" of this allegation. There is no language in the answer stating that all matters not specifically admitted are denied. Defendant has presented nothing to controvert this allegation.

The first agreement called for the installment payment by Dettore to be made to "seller or assigns" commencing June 30, 1973. Plaintiff's answer to defendant's interrogatory number 3 establishes that the first payment was made August 6, 1973, to Thorp Commercial. The September payment was also made to Thorp Commercial. Payments made in October, 1973, through October, 1974, were made to Thorp Sales.

The affidavit of Steve L. Ostby, Financial Manager of Thorp Sales, is attached to plaintiff's Motion for Summary Judgment. He states he is responsible for and has custody of plaintiff's financial records. He claims personal knowledge of the matters referred to in the affidavit. He states that Thorp Sales is the owner of the two security agreements involved here by assignment from Thorp Commercial. A copy of an assignment from Thorp Commercial to Thorp Sales is attached to the affidavit as Exhibit 1. It purports to assign both the first agreement of June 30, 1973, and the second agreement of July 24, 1973, to Thorp Sales. The Court concludes that the statements in the affidavit are sufficient to establish the attached copy as a sworn copy pursuant to Rule 56(e) of the Federal Rules of Civil Procedure.

Mr. Ostby also states that financing statements covering the five Wabco Haulpak trucks were filed in Oakland County, Michigan, on July 3, 1973, and with the Secretary of State of the State of Michigan on July 5, 1973. Copies of these financing statements are attached to his affidavit as Exhibits 2 and 3, respectively. Certified copies of these financing statements are attached to the affidavit of plaintiff's counsel, which affidavit is also attached to the plaintiff's motion. On each of these financing statements, Louis John Dettore is shown as debtor and Thorp Commercial Corp. is shown as secured party. The filed statements show, in addition to the other equipment secured by the first agreement, that "5—Wabco Haulpak Rear Dumps" are covered by the financing statement.

Dolese argues that the record fails to establish that Thorp Sales is the ultimate assignee of Michigan Trenching. The rea-

son asserted is that there is no assignment from ITT Thorp Corporation to Thorp Commercial. It is reasonable to conclude, in light of the complaint, Ostby's affidavit, the sworn answers to interrogatories and the financing statements filed by Thorp Commercial so close to the time of the assignment by Michigan Trenching, that Thorp Commercial is the "subsidiary or affiliated" corporation referred to in the assignment. Therefore, the Court finds that Thorp Commercial is the assignee of Michigan Trenching. The fact that Thorp Sales is the assignee of Thorp Commercial is clearly established and not controverted. The fact that the assignment from Thorp Commercial to Thorp Sales includes both the first and the second agreements, when Thorp Sales was already the direct assignee of Southeastern as to the second agreement, does not alter its effectiveness as an assignment of the first security agreement. The assignment is effective to transfer whatever interest Thorp Commercial had at the time, and that has been found to be complete interest in the first agreement.

It is clear from the plaintiff's answer to the defendant's interrogatories that Dettore made payments to Thorp Sales pursuant to both security agreements through October 10, 1974. No payments have been made since that time. Dettore is in default under the terms of the agreements. Dettore died on October 16, 1974.

Thorp Sales claims that after the security interest in the trucks had attached, they were wrongfully transferred to Dolese and removed to Oklahoma where they are now in defendant's possession. Defendant admits the trucks were removed to Oklahoma and are now in its possession. The date of the transfer to defendant is not established. Defendant contends that plaintiff's security interest in the trucks did not attach prior to its transfer.

The first agreement provides that the equipment is to be kept at Dettore's principal place of business, except for temporary removal in connection with its ordinary use. The agreement also provides that the rights and remedies of the secured party and Det-

tore will be those provided by the laws in force in the state in which the collateral is to be kept. It is stated in the agreement that the address appearing on the face of the document is Dettore's principal place of business. Dettore's address is given as:

28420 W. 8 Mile Rd.
Farmington, Michigan

Farmington is located in Oakland County, Michigan.

The first agreement acknowledges delivery of the collateral. It further:

"Grants to the Seller a security interest in the collateral and all additions and accessions thereto and proceeds thereof to secure payment and performance of all Buyer's obligations under this Installment Sale Contract and security agreement . . . and any renewals or extensions thereof, and all of Buyer's future debts, obligations and liabilities of whatever nature to Seller or Seller's assignee."

On the basis of the above quoted language plaintiff claims a right to satisfy the indebtedness of Dettore under both agreements from the trucks in defendant's possession. Plaintiff claims to be "seller's assignee". The amount owing under the second agreement is a "debt, obligation and liability" of Dettore owed to plaintiff. Plaintiff also seeks recovery of a reasonable attorney's fee as provided in the first agreement. Plaintiff asserts that all facts showing its entitlement to judgment are in the record, there are no genuine controversies as to any material fact and it is entitled to judgment as a matter of law.

Defendant claims that the above quoted language is what has been called a "dragnet clause". Defendant further claims that such a clause is not favored and is not effective to make the trucks security for the debt evidenced by the second agreement. It asserts that the construction of this clause is a legal question to be determined under Michigan law (the law of the state where the collateral was to be kept). Defendant argues that there are no genuine factual controversies bearing upon this

question, and they are entitled to a partial summary judgment. Defendant further argues that the plaintiff has not presented sufficient proof to provide the Court with a basis upon which to conclude that plaintiff's security interest in the trucks ever attached. It is claimed that this leaves a fact question as to a material issue in the plaintiff's case and therefore summary judgment in favor of the plaintiff is not proper at this time.

Defendant's Motion for Partial Summary Judgment will limit the scope of plaintiff's motion. Therefore, it will be treated first.

### Defendant's Motion for Partial Summary Judgment

■ Defendant's motion presents a singular issue: does the language of the first security agreement make the trucks security for the debt evidenced by the second agreement.

It is clear that "future advance" clauses are approved by the UCC. Section 9–204(5) provides that "obligations covered by a security agreement may include future advances or other value whether or not the advances or the value are given pursuant to commitment". If Michigan Trenching and debtor had been the original parties to the second transaction, it would be a simple matter to conclude that when the parties entered into the first agreement, they anticipated future dealings and intended the terms of their security agreement to make the trucks collateral for debts created in subsequent dealings.

There is a great deal of danger inherent in reading agreements in a manner which allows a party to buy up claims of third persons and bring such claims within a security agreement or mortgage held by that party. The pre-code rule has been stated as follows:

A mortgagee, buying up claims held by third persons against his mortgagor, cannot include them in his mortgage and compel their settlement as a condition to

redemption, or have them included in a foreclosure decree, unless with the consent of the mortgagor and in cases where no subsequent purchaser or lien creditor will be prejudiced. Even where the mortgage is so drawn to cover any demands which the mortgagee may hold against the mortgagor, the mortgagee cannot by virtue of the instrument buy up outstanding claims against the mortgagor and include them in the security, unless a provision that he may do so is clearly and unequivocally expressed, since a situation of this character ordinarily can cover only such demands as arise directly out of dealings between the parties to the instrument.

59 C.J.S. Mortgages § 178c, page 224.

The Court concludes that the language used in the first agreement and relied upon by the plaintiff is unclear and ambiguous. It is not clear whether that language is to make the collateral identified in the security agreement and financing statement subject to all of Dettore's future debts, obligations and liabilities which may be created as between him and Michigan Trenching or Michigan Trenching's assignee, or all debts that Dettore may end up owing to Michigan Trenching or Michigan Trenching's assignee without respect to whom they were originally owed. Plaintiff admits that the first and second transactions are unrelated except for the claim that the second debt is secured by the collateral identified in the first.

Defendant relies primarily on the case of *Lashbrooks v. Hatheway*, 52 Mich. 124, 17 N.W. 723 (1883), which contains the following language:

The next question is whether the mortgage can be held to cover any other demand. We have seen that by its terms it purported to secure any claims the mortgagee might have against the mortgagors either before or at the time of foreclosure; and it seems to be thought that the mortgagee might buy up demands at discretion and thereby extend the mortgage

indefinitely. But this would be so extraordinary an arrangement that the intent to provide for it ought to be too clear for doubt before a court could be justified in enforcing it. We do not think it is to be found in this mortgage. The furthest this stipulation can be understood to go is to cover demands directly arising out of the dealings between the mortgagors and the mortgagee, and its terms will be fully answered if they are limited to such demands.

The case *National Bank of Eastern Arkansas v. Blankenship*, 177 F.Supp. 667 (E.D. Ark.1959) clearly summarized the precode law.

The "other indebtedness" secured by a mortgage may be either antecedent or subsequent. Where it is antecedent, it must be identified in clear terms, and where it is subsequent, it must be of the same class as the primary obligation secured by the instrument and so related to it that the consent of the debtor to its inclusion may be inferred.

2 Gilmore, Security Interests in Personal Property, § 35 discusses the circumstances under which future transactions may be secured under an earlier made agreement. Professor Gilmore cites *National Bank of Eastern Arkansas v. Blankenship*, supra, as a fair summary of the general law prior to the code and concludes that the same rationale should be applied in the interpretation of transactions arising under the code. See also *John Miller Supply Co., Inc. v. Western State Bank*, 55 Wis.2d 385, 199 N.W.2d 161 (1972).

■ The Court is convinced by the numerous cases cited by the plaintiff, that it is no longer necessary, as between the original lender and the original debtor, for future advances to be of the same class as the primary obligation. See *First National Bank in Dallas v. Rozelle*, 493 F.2d 1196 (10th Cir. 1974); *In re Public Leasing Corporation*, 488 F.2d 1369 (10th Cir. 1973); *In re Riss Tanning Corporation*, 468 F.2d 1211

(2nd Cir. 1972); *Kenneally v. Standard Electronics Corporation*, 364 F.2d 642 (8th Cir. 1966); *In re Dorsey Electric Supply Co.*, 344 F.Supp. 1171 (E.D.Ark.1972); and *Maloy v. Citizens and Southern National Bank*, 139 Ga.App. 798, 229 S.E.2d 678, 20 UCC Rptr. 750 (1976). Clauses such as that involved here are valid to include in the security agreement all other debts of whatever class or character created between the original parties. All of these cases involved additional advances of value by the original lender to the original debtor. None of these cases involved an assignee of the original lender purchasing an obligation of the original debtor from a third party. In *First National Bank in Dallas v. Rozelle*, supra, Judge Holloway, writing on behalf of the Tenth Circuit, made this distinction clear in a footnote on page 1202. He commented,

Such clauses have been scrutinized as suspect "dragnet" clauses, see *First v. Byrne*, 238 Iowa 712, 28 N.W.2d 509, especially where the mortgage is sought to be foreclosed to satisfy obligations acquired by the mortgagee from third parties. See 2 G. Gilmore, Security Interest in Personal Property 918 (1965); *Wood v. Parker Square State Bank*, 400 S.W. 898 (Tex.) The case before us involves no such indebtedness. Furthermore, the rights of third parties are not involved and thus the question of priorities does not arise.

The language relied upon by the plaintiff in the first agreement is not sufficient to enable the plaintiff to purchase the second agreement from Southeastern and have that indebtedness secured by his security interest in the trucks. Therefore, the defendant is entitled to a partial summary judgment declaring that the indebtedness of Dettore evidenced by the second agreement is not secured by the collateral in defendant's possession.

*Plaintiff's Motion for Summary Judgment*

■ The plaintiff states that the only issue is whether the defendant's claim to

possession is greater than plaintiff's. It is asserted that the interest of Thorp Sales in the collateral is and remains paramount.

It is clear that if the security interest in the trucks has attached, it is perfected by filing. Therefore, Dolese is charged with knowledge of plaintiff's interest whether or not there was actual notice. Once the security interest in collateral is perfected by filing, any buyer *not* in the ordinary course of business takes subject to the security interest. However, if the security interest is not perfected even a buyer not in the course of business will have priority to the extent he gives value and receives delivery of the collateral without knowledge of the security interest and before it is perfected. UCC § 9–301(1)(c). A buyer in ordinary course of business (other than a person buying farm products from a person engaged in farming operations) takes free of a security interest created by *his* seller even though the security interest is perfected and even though the buyer knows of its existence. UCC § 9–307(1). A buyer in the ordinary course of business is defined in § 1–201(9).

A security interest is perfected when it has attached and when all the applicable steps required for perfection have been taken. UCC § 9–303(1). The term "attach" is used in article 9 to describe the point at which property becomes subject to a security interest. Comment 1 to section 9–303. Section 9–204 governs when a security interest attaches. It cannot attach until there is an agreement that it attach, value is given and the debtor has rights in the collateral.

In the case of installment sales contracts, such as that here, the security interest would attach when the "seller", pursuant to a valid agreement, gives the "debtor" possession, or an enforceable right to possession, of the goods and agrees to part with such possessory rights in exchange for the "debtor's" promise to make installment payments of the purchase price. Of course, if the "seller" has no valid right to possession, his buyer would receive none. By the same

token, if the "seller" had no rights to transfer there is no value given. In such case, the obligation of the "debtor" to make installment payments is unenforceable for failure of consideration. The extension of value and the debtor's rights in the collateral can be very closely linked in a conditional sale. The term "value" is defined for UCC purposes in section 1–201(44).

Here the defendant claims that Michigan Trenching had no rights in the equipment to transfer as the trucks belonged to Whittaker and Gooding Co. at the time the first agreement was executed. In plaintiff's response to defendant's request for admission number 7, in defendant's first set of requests for admissions, the plaintiff admits that Michigan Trenching was not the owner of the trucks on June 30, 1973. The answer to the very next request for admission admits that an entity identified as Whittaker and Gooding Co. was owner of the trucks on the date of the execution of the first agreement. The response states, however, that the trucks had been consigned to Michigan Trenching for sale. If Michigan Trenching had the right under a contract with Whittaker and Gooding Co. to transfer possession to a conditional buyer upon credit, that transfer of possession would be both an extension of value and provide Dettore with a possessory right in the collateral pursuant to the installment sales contract. The security interest would have attached at that time. The actual location of legal title is not of crucial significance in achieving an attached security interest.

Common sense dictates that Dolese must at some point claim that Dettore had rights in the collateral prior to transferring the trucks to it. However, for the purposes of the plaintiff's Motion for Summary Judgment, the burden is upon the plaintiff to establish that their security interest has attached. The complaint fails to set forth what rights in the collateral Michigan Trenching had at the time the first agreement was entered into. There is no affidavit from any involved party either at Whit-

taker and Gooding Co. or Michigan Trenching which would provide a basis for concluding that a consignment for sale arrangement had in fact been established between Whittaker and Gooding Co. and Michigan Trenching. It is reasonable to believe that such was in fact the case. The verified statement in the response to the request for admissions is uncontroverted. However, the Court has serious doubts as to whether it can be relied upon for purposes of summary judgment. Wright and Miller, Federal Practice and Procedure: Civil § 2264 at page 741 instructs that a party may not utilize his own admissions at trial. It is only when the admission is offered against the party who made it that it comes within the exception to the hearsay rule for admissions of a party opponent.

Although both parties to this action must claim that Dettore acquired some rights in the trucks, the Court concludes that the plaintiff erroneously framed the issue. The question is not whether plaintiff's right in the trucks is simply superior to defendant's. The question is whether plaintiff has established all essential elements of its right to possession. That burden is upon the plaintiff. Defendant has possession and only upon an adequate showing by plaintiff is defendant obligated to establish a legal basis for its possessory rights. Even one who finds lost property may hold it against all except the true owner.

Here, it is only logical to conclude, if indulging in speculation, that Dettore received rights in the collateral and Michigan Trenching extended value. Michigan Trenching would have given the value in extending credit to Dettore, by paying Whittaker and Gooding Co., by agreeing to pay Whittaker and Gooding Co. or by simply transferring possession to Dettore if lawfully empowered to do so. However, the Court cannot render judgment through speculation. The elements to support a judgment must appear in the record. Where they do not appear and where their existence is contested, there exists a genuine issue as to a material fact and summary judgment is not appropriate.

Plaintiff will need to make some showing, or at least plead and have defendant fail to deny, that Dettore was not in the business of selling trucks, in order to establish that the sale from Dettore to Dolese was not in the ordinary course of business.

The plaintiff will need to show, in a manner which the Court can consider in support of plaintiff's motion, that Michigan Trenching had some right in the trucks which they could transfer to Dettore so that Michigan Trenching may be viewed as having given value and Dettore, at an identifiable point in time acquired rights in the collateral.

For the reasons above stated, the Court concludes that a Motion for Summary Judgment in favor of the plaintiff is not, at this time, warranted. Therefore, the plaintiff's motion should be and is hereby overruled.