In re ROBERT B. LEE ENTERPRISES, INC., Debtor.

MICHAEL A. GRASSMUECK, INC., Trustee, Appellant,

v.

CHAMPION CREDIT CORPORATION, Appellee.

No. 91–35488.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 5, 1992.

Decided Dec. 2, 1992.

---

G. Jefferson Campbell, Jr., Medford, Or., for appellant.

Benjamin E. Freudenberg, Nelson, Freudenberg & James, Grants Pass, Or., for appellee.

Before: BROWNING, THOMPSON and KLEINFELD, Circuit Judges.

DAVID R. THOMPSON, Circuit Judge:

The issue we decide in this appeal is whether advances made by a secured party's assignee under a security agreement containing a future advance clause have priority over other creditors' secured liens which arose after the originally secured party's rights were perfected but before future advances were made by the assignee. We hold that the assignee's future advances are entitled to the priority position of the secured party under the security agreement, and affirm the decisions of the bankruptcy court and the bankruptcy appellate panel ("BAP").

## FACTS

FinanceAmerica Private Brands, Inc. ("FinanceAmerica") entered into a flooring arrangement with Robert B. Lee Enterprises ("Lee") to provide financing for Lee's inventory of mobile homes. FinanceAmerica lent money to Lee under a security agreement which gave it a floating security interest in whatever mobile home inventory Lee had from time to time. The security agreement contained a future advance clause. It also contained a provision that it could be assigned. FinanceAmerica's rights under the security agreement were perfected and appropriate financing statements were filed with the Oregon Secretary of State.

FinanceAmerica assigned its rights under the security agreement to Champion Credit Corp. ("Champion"). Amendments to the previously filed financing statements were timely filed to reflect this assignment. Thereafter, Champion lent Lee money under the future advance clause of the security agreement to enable Lee to buy thirteen mobile homes. Lee later filed for protection under the Bankruptcy Act. At that time, Lee was still indebted to Champion for a substantial portion of its advances. Two of the thirteen mobile homes had been sold to customers, ten remained on Lee's sales lots, and one was being used by Lee. Champion asserted the secured party's lien under the security agreement as to all thirteen mobile homes.

The trustee in Lee's bankruptcy proceeding contended that Champion was not entitled to the secured party's security interest under the security agreement, because Champion was merely an assignee of that agreement. The trustee argued that any security interest Champion claimed could only arise from Champion's own security agreements which it in fact had obtained from Lee at the time it made its future advances. By that time, the liens of other secured creditors had intervened.

The bankruptcy court held, and the BAP affirmed, that Champion acquired the priority position of the secured party under the FinanceAmerica security agreement, and that its claim to a security interest in the unsold mobile homes was senior to the claims of the intervening secured creditors.[1] The trustee appeals. We have jurisdiction under 28 U.S.C. § 158(d) and we affirm.

## STANDARD OF REVIEW

■ The trustee presents questions of state law and contract interpretation. We review both de novo. *In re Professional Investment Properties of America*, 955 F.2d 623, 626 (9th Cir.), *cert. denied*, ——

---

1. The bankruptcy court rejected Champion's claim to a security interest in the mobile homes which had been sold. Champion does not challenge this determination.

U.S. ——, 113 S.Ct. 63, 121 L.Ed.2d 31 (1992) (questions of law in a bankruptcy proceeding reviewed de novo); *Aetna Casualty and Surety Co. v. Pintlar Corp.*, 948 F.2d 1507, 1511 (9th Cir.1991) (contract interpretation reviewed de novo).

## DISCUSSION

■ The trustee points out that under paragraph 1 of the security agreement, FinanceAmerica is the only "Secured Party" named, and under paragraph 3 it is the "Secured Party" that is secured. The trustee concedes future advances made by FinanceAmerica would be covered by the agreement, but he contends that future advances made by Champion are not covered because Champion is not the "Secured Party" designated in the agreement.

We reject this argument. The language of paragraph 1 upon which the trustee relies provides: "The parties to this security agreement are FinanceAmerica Private Brands, Inc. (hereinafter "Secured Party") and Robert B. Lee, Enterprises, Inc. ... (hereinafter "Dealer"). This language does no more than define who the secured party was at the time the agreement was signed.

Paragraph 8 of the security agreement provides that the "Secured Party may assign the benefits of this Security Agreement to a third party, whereupon Secured Party's assignee shall be entitled thereto and [Lee] shall thereupon be obligated to Secured Party's assignee for the payment of Obligations and the performance of all other obligations for which it is bound hereunder." In light of this provision, the party who is secured can change from time to time depending upon exercise of the rights of assignment in the agreement. When such an assignment occurs, the reference to "Secured Party" in the agreement, consistent with paragraph 8, refers to the current Secured Party. This conclusion is further buttressed by Oregon law which provides that "[a]fter the disclosure or filing of an assignment ... the assignee *is the secured party of record.*" Oregon Revised Statute § 79.4050(3) (1991) (emphasis added).

We conclude that Champion's future advances to provide Lee with money to buy the thirteen mobile homes are secured by the security agreement Champion obtained by assignment from FinanceAmerica. The cases relied upon by the trustee, *In re E.A. Fretz Co., Inc.*, 565 F.2d 366 (5th Cir.1978), and *Thorp Sales Corp. v. Dolese Bros. Co.*, 453 F.Supp. 196 (W.D.Okla.1978), are not to the contrary.

In *Fretz*, the secured party under a security agreement bought up the claims of junior creditors and attempted to attach those claims to its secured claim which had priority over the claims of intervening creditors. The junior creditors were neither secured parties to whom the debtor had granted a security interest, nor were they assignees of such a secured party. *Fretz*, 565 F.2d at 369. Moreover, the secured party bought up the junior creditors' claims after the debtor had filed for protection under the Bankruptcy Act. The *Fretz* court stated: "The intervention of the debtor's bankruptcy before the assignment [from the junior creditors to the senior lienholder] truncated any possible transformation of unperfected, unsecured interests into perfected secured interests." *Id.* at 374 (footnote omitted).

In *Thorp*, the language of the security agreement was found to be insufficient to cover future advances made by the secured party's assignee. *Thorp*, 453 F.Supp. at 200.

Our conclusion that Champion's future advances are covered by the security agreement it acquired from FinanceAmerica finds additional support in Oregon law. Under Oregon Revised Statute § 79.4050(2) (1991), "[a] secured party may assign of record all or part of the secured party's rights under a financing statement ...", and under Oregon Revised Statute § 79.2040(3) (1991), "[o]bligations covered by a security agreement may include future advances or other value...." Taken together, these sections allow an assignee to make future advances and retain the priority of his assignor. Finally, Oregon Revised Statute § 79.2010 (1991) states that "[e]xcept as otherwise provided ... a secu-

rity agreement is effective according to its terms...." The terms of the security agreement which FinanceAmerica assigned to Champion gave Champion the rights of the Secured Party. Oregon law does not preclude this.

We are not daunted by the trustee's prediction that this holding will have dire consequences. Relying on *Thorp,* the trustee argues that allowing the assigned security interest to cover advances made by someone other than the original secured party involves "a great deal of danger." *Thorp,* 453 F.Supp. at 199. The trustee foresees the possibility of a market for security interests developing in which senior security holders sell the priority of their perfected security agreements at "artificially inflated" prices to defeat the claims of intervening secured creditors.

Even if we were to assume that such a practice could develop, we are unable to discern who the victims of the practice might be under the facts of this case. The filing of a financing statement with the Secretary of State gives notice to later creditors that a security agreement exists. When, as here, the security agreement contains a future advance clause together with a clause permitting assignment, creditors contemplating extending credit to the debtor are put on notice that the secured party or its assignee may make future advances under the security agreement and that those advances will have priority consistent with the agreement and applicable law. Creditors who choose to extend credit to a debtor in the face of this knowledge can hardly be heard to complain when the risk they assume materializes.

AFFIRMED.