Michael R. MASTRO, an unmarried man, individually, and Michael R. Mastro, as executor for the Estate of Joan Kelly Mastro, Deceased, and Michael R. Mastro as Beneficiary of the Estate of Joan Kelly Mastro, Deceased, and the Estate of Joan Kelly Mastro, Deceased, Plaintiffs–Appellants–Cross–Appellees,

v.

Winifred Q. WITT, an unmarried woman, individually, and Winifred Q. Witt, as Personal Representative of the Estate of Samuel O. Witt, Deceased, the Estate of Samuel O. Witt, Deceased, and Winifred Q. Witt and Samuel O. Witt, Deceased, Husband and Wife, Defendants–Appellees–Cross–Appellants.

Nos. 92–17042, 92–17117.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 11, 1994.

Decided Nov. 4, 1994.

Dillon E. Jackson, Foster, Pepper & Shefelman, Seattle, WA, for plaintiffs-appellants-cross-appellees.

Scott D. Gibson, O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears, Tucson, AZ, for defendants-appellees-cross-appellants.

Before: POOLE, BEEZER and T.G. NELSON, Circuit Judges.

**T.G. NELSON, Circuit Judge:**

### I.

### OVERVIEW

Michael and Joan Kelly [1] Mastro (Mastro) appeal the district court's finding that Samuel [2] and Winifred Witt (Witt) had a first priority security interest in certain collateral. As a result of this priority, the district court held that Mastro must apply the receivables from the collateral, which he purchased at a foreclosure sale, toward a debt owed by Witt to Mastro. Mastro had secured this debt by obtaining Witt's security interest in the collateral. Witt cross-appeals the district court's denial of attorneys' fees and partial denial of costs. We reverse and remand.

### II.

### FACTS AND PROCEDURAL HISTORY

The relevant facts of this case are undisputed. Lew S. McGinnis (McGinnis) was entitled to the receipts from a land sale contract on the Sherwood Gardens Apartments. This land sale contract was a wraparound contract; the property was already subject to a first mortgage and a portion of the payments under the land sale contract had to be remitted to the mortgagee. Thus, the receipts of the land sale contract to which McGinnis was rightfully entitled, hereafter referred to as the Sherwood Receivables, included only that portion of the land sale contract payments remaining after the mortgage payment was made.

McGinnis borrowed money from Witt, and as security for this loan, Witt obtained a security interest in McGinnis' right to the Sherwood Receivables. Witt recorded a UCC–1 financing statement signed by McGinnis in Pima County, Arizona, the location of the Sherwood Gardens Apartments. However, Witt did not file the financing statement with the Arizona Secretary of State (Secretary). As a result, Witt's security interest remained unperfected. *See*

A.R.S. § 47–9401(A)(3). (All statutory citations hereinafter refer to the Arizona Revised Statutes.)

After McGinnis gave Witt a security interest in the Sherwood Receivables, McGinnis also gave a group of creditors, who we will refer to as the Colman Group, a security interest in the Sherwood Receivables. The Colman Group perfected its security interest by filing a UCC–1 financing statement with the Secretary; it also filed in Pima County. There is no evidence the Colman Group had knowledge of Witt's prior, unperfected security interest.

Finally, McGinnis borrowed money from Mastro and signed a promissory note for $328,000 (McGinnis Note). McGinnis convinced Witt to unconditionally guarantee payment of the McGinnis Note by signing a guaranty agreement drafted by Mastro. As security for this guaranty, Witt assigned to Mastro her security interest in the Sherwood Receivables which she had previously obtained from McGinnis. McGinnis defaulted on the McGinnis Note and filed for Chapter 11 bankruptcy.

The Colman Group obtained relief from the automatic stay in bankruptcy in order to foreclose its security interest in the Sherwood Receivables. It held a public sale giving notice to both Mastro and Witt. At the public sale, Mastro purchased the Sherwood Receivables for $800,000. Mastro then paid $793,000 to satisfy the first mortgage on the Sherwood Gardens Apartments which had been wrapped by the land sale contract. Having paid off the first mortgage, Mastro became entitled to receive the entire payment from the land sale contract.

Then Mastro, after acquiring the Sherwood Receivables by purchasing them at the foreclosure sale, filed this suit against Witt, demanding Witt fulfill her guaranty of the McGinnis Note which was in default. The district court initially granted partial summary judgment for Mastro, finding that Witt was liable as guarantor for McGinnis' debt. Witt then filed a motion for new trial or to

---

1. Joan Kelly Mastro is now deceased; her estate is represented in this appeal by her personal representative, Michael Mastro.

2. Samuel Witt is now deceased; his estate is represented in this appeal by his personal representative, Winifred Witt.

amend the judgment, claiming the loan had already been paid. The district court, concerned about this claim, ordered an accounting to determine the exact amount due under the McGinnis Note.

When accountants were unable to determine the exact amount due, the district court conducted a two-day trial to resolve the issue. After the trial and supplemental briefing, the district court entered judgment for Witt. It held that Witt's security interest was superior to the Colman Group's security interest under § 47–9401(B). As a result, it found the proceeds from the Sherwood Receivables which Mastro had purchased at the foreclosure sale were to be applied to Witt's debt on the guaranty. It also held the interest rate under the McGinnis Note was to be calculated by a simple rate of interest at eighteen percent.

Mastro made a motion to alter or amend the judgment. In denying this motion, the district court: 1) reaffirmed its ruling that Witt had priority over the Colman Group and that Mastro's receipts of the Sherwood Receivables were to be credited against Witt's debt owed on the McGinnis Note; 2) reaffirmed its ruling that interest was to be calculated at a simple rate of eighteen percent; 3) rejected a new argument made by Mastro that Witt had no security interest in the Sherwood Receivables because there was no security agreement; 4) granted Witt partial costs, although it affirmed its prior ruling requiring Witt to pay for the cost of accounting; and 5) denied Witt's claim for attorneys' fees. Mastro appeals the district court's judgment, and Witt cross-appeals for accounting costs and attorneys' fees.

### III.

### DISCUSSION

#### A. Standard of Review

■ This case presents questions of state law and contract interpretation which we review *de novo*. *In Re Robert B. Lee Enters., Inc.*, 980 F.2d 606, 607 (9th Cir.1992); *see also In Re McLinn*, 739 F.2d 1395, 1397 (9th Cir.1984) (en banc) ("[W]e adopt as the law of the circuit the rule that questions of state law are reviewable under the same independent *de novo* standard as are questions of federal law."); *Aetna Casualty and Surety Co. v. Pintlar Corp.*, 948 F.2d 1507, 1511 (9th Cir.1991) (interpretation of ambiguous contract language reviewed *de novo*).

#### B. Witt's Liability on the Guaranty

Witt concedes that her security interest was unperfected and that the Colman Group had no knowledge of her unperfected interest when it obtained its perfected interest. Despite these concessions, she argues that her interest had priority over the Colman Group's interest at the foreclosure sale. Witt requests we hold, pursuant to § 47–9401(B), that Mastro's knowledge of her unperfected security interest resulted in subordinating the Colman Group's interest to her interest at the foreclosure sale. We decline to interpret § 47–9401(B) as imputing knowledge in the manner Witt suggests. We hold that the Colman Group's perfected security interest had priority over Witt's prior, but unperfected, security interest and that the foreclosure sale held by the Colman Group discharged Witt's subordinate security interest.

#### 1. Priority of Security Interests in Sherwood Receivables

■ Although the Arizona Supreme Court has not addressed the issue, courts generally agree that an interest in a land sale contract, such as the Sherwood Receivables, is a general intangible subject to Article Nine of the Uniform Commercial Code. *See e.g., In Re Holiday Intervals, Inc.*, 931 F.2d 500, 502 (8th Cir.1991). Security interests in general intangibles must be perfected by filing a financing statement with limited exceptions not applicable here. *See generally* A.R.S. § 47–9302. Witt concedes Arizona law required her to file a financing statement with the Secretary in order to perfect a security interest in the Sherwood Receivables. *See* A.R.S. § 47–9401(A)(3).

In the event a creditor fails to properly file a financing statement, § 47–9401(B) provides some protection against subsequent creditors who obtain rights in the same collateral. It states in relevant part:

A filing which is made in good faith in an improper place or not in all the places required by this section is nevertheless effective ... with regard to collateral covered by the financing statement against *any person* who has knowledge of the contents of such financing statement.

A.R.S. § 47–9401(B) (emphasis added). This section contemplates a misfiled financing statement and a subsequent creditor who has knowledge of that financing statement; where a subsequent creditor has knowledge of a prior unperfected security interest, he cannot obtain priority over that unperfected interest. *See In Re Mistura, Inc.*, 705 F.2d 1496, 1498–99 (9th Cir.1983) (holding that secured creditor with unperfected security interest can prove knowledge of subsequent secured creditor with perfected security interest to maintain priority), *overruled on other grounds as stated in, Union Cent. Life Ins. Co. v. Wernick*, 777 F.2d 499, 502 n. 7 (9th Cir.1985).

■ The requisite degree of knowledge required by § 47–9401(B) is actual knowledge. *Id.* at 1498. In *Mistura*, we held that "the Arizona Supreme Court would follow the line of cases holding that [actual] knowledge of the facts contained in a financing statement ... satisfies the requisite knowledge requirement of [§ 47–9401(B) ]." *Id.* at 1498–99. A creditor with an unperfected security interest who seeks the benefit of § .47–9401(B) has the burden of proving another creditor's actual knowledge of its financing statement. *See id.*

Contrary to the district court's conclusion, the Colman Group's security interest had priority over Witt's security interest in the Sherwood Receivables. Although Witt obtained her security interest prior in time to the Colman Group's security interest, she concedes her security interest was unperfected because she failed to file a financing statement in the office of the Secretary as required by § 47–9401(A)(3). As a result, we conclude the Colman Group obtained priority over Witt's unperfected interest when it perfected its security interest in the Sherwood Receivables. *See* A.R.S. §§ 47–9301(A)(1) and 47–9312(D)(1) (conflicting security inter-

ests rank according to priority in time of filing or perfection).

■ We now address Witt's specific contention that Mastro's knowledge somehow affected the Colman Group's priority over Witt. Mastro clearly had actual knowledge of the contents of Witt's financing statement due to the manner in which Mastro obtained his own security interest in the Sherwood Receivables, *i.e.*, by assignment from Witt. However, Witt offers no authority, other than § 47–9401(B), for the proposition that Mastro's knowledge that Witt had filed a financing statement prior in time to the Colman Group results in the Colman Group's perfected interest being subordinated to Witt's unperfected interest. Witt argues the language of § 47–9401(B), which states that a misfiled financing statement is effective against *any person* who has knowledge, allows such an interpretation.

■ We decline to adopt Witt's proposed interpretation of § 47–9401(B); the fact that Mastro had knowledge of the contents of the financing statement does not alter the priority between the Colman Group and Witt. Although in this particular case the Colman Group would not be harmed by subordination to Witt, a rule of law allowing for the imputation of one perfected creditor's knowledge of the contents of a financing statement to another prior in time would unfairly penalize the prior in time perfected creditor who properly complied with Article Nine and did not know of the prior unperfected security interest. Such a rule would only serve to promote unfair, collusive dealings between the initial creditor who failed to properly file and perfected creditors later in time to the interest they wish to defeat. We hold that, under § 47–9401(B), a creditor's knowledge of another creditor's unperfected security interest will only result in the subordination of the creditor with actual knowledge; that knowledge does not affect the priority of other creditors vis a vis the unperfected secured party who failed to properly file a financing statement. Consequently, Mastro's knowledge of the contents of Witt's financing statement did not result in subordinating the Colman Group to Witt.

### 2. *Discharge of Subordinate Liens by Foreclosure Sale*

Again relying on § 47–9401(B), Witt argues that Mastro, as purchaser at the foreclosure sale, could not purchase the collateral free of Witt's security interest because he had actual knowledge of that security interest. We reject this argument and hold that, because the Colman Group's interest was superior to Witt's interest, the foreclosure sale held by the Colman Group discharged Witt's subordinate lien pursuant to § 47–9504(D).

Section 47–9504(D) provides in relevant part:

> When collateral is disposed of by a secured party after default, the disposition transfers to a purchaser for value all of the debtor's rights therein, discharges the security interest under which it is made and *any security interest or lien subordinate thereto.* The purchaser takes free of all such rights and interests. . . .

A.R.S. § 47–9504(D) (emphasis added). In accord with § 47–9504(D), the Colman Group's sale of the collateral to a purchaser for value discharged Witt's subordinate security interest.

Mastro's knowledge of Witt's security interest did not prevent its discharge. Interpreting Idaho's counterpart to § 47–9504(D), we held a purchaser's knowledge of a subordinate security interest which will be cut off by a foreclosure sale is irrelevant: "An examination of the priority and foreclosure scheme of Article Nine demonstrates that absence of knowledge of subordinate security interests could not be a prerequisite for a purchaser to buy property free of encumbrances at a foreclosure sale." *Northwest Equip. Sales Co. v. Western Packers, Inc.,* 623 F.2d 92, 95 (9th Cir.1980). The court in *Northwest* found no obligation of good faith was breached by a purchaser who had knowledge of encumbrances which it would cut off. *Id.* Consequently, Mastro's knowledge of Witt's unperfected security interest did not hinder his ability to purchase the Sherwood Receivables free and clear of Witt's security interest.

Witt's argument, simply stated, is that a purchaser of a security interest at a foreclosure sale takes subject to unperfected security interests of which he has knowledge. We find no textual support in Article Nine for this proposition, and in fact, the argument contradicts the language of § 47–9504(D) which provides that a foreclosure sale discharges "*any* security interest or lien subordinate" to the foreclosed lien. A.R.S. § 47–9504(D) (emphasis added).

Furthermore, the rule proposed by Witt would make no sense. It would restrict the pool of potential purchasers at the sale, to the detriment of the foreclosing security holder, with no potential benefit to those holding junior interests. It would also make the purchase subject to known but unperfected claims, but not to known but perfected claims, a result contrary to § 47–9504(D) and to common sense as well.

In sum, we conclude that the Colman Group had priority over Witt because Witt's security interest, although prior in time, was unperfected and the Colman Group had no knowledge of this unperfected security interest. Thus, the Colman Group's foreclosure sale discharged Witt's subordinate security interest. Further, we conclude Mastro's knowledge that Witt's unperfected security interest was prior in time to the Colman Group's security interest did not affect the Colman Group's priority and did not prevent Mastro from purchasing the Sherwood Receivables at the foreclosure sale free and clear of Witt's interest pursuant to § 47–9504(D). Consequently, we hold that the district court erred when it concluded Mastro must apply the receivables to Witt's debt on the McGinnis Note; Witt remains liable on that note.

Given the foregoing, Mastro's argument that Witt had no valid security interest because she had no security agreement is not relevant. A determination that Witt either had or did not have a valid security interest does not change the result that Mastro purchased the collateral free of any interest Witt might have had.

### C. *Rate of Interest and Amount Owing on the McGinnis Note*

■ At trial, Witt argued that the McGinnis Note provided only for simple interest. The district court found that the terms of the contract were ambiguous and that this ambiguity should be construed against Mastro, the drafter of the note, because insufficient evidence was presented to determine whether the interest was to be compounded. Mastro appeals arguing the district court erred because the evidence supports a finding for compound interest. The relevant portion of the McGinnis Note at issue provides:

> The principal sum of this Note from time to time outstanding, plus all unpaid accrued interest, will bear interest from the date of this Note, at the per annum rate of eighteen percent (18%).

■ We have held that when the interest rate is unclear from the face of the document, consideration of the parties' intent is required:

> Intent is relevant ... when the rate of interest to be charged cannot be ascertained from the face of the agreement. In such a case, the court must have recourse to extrinsic evidence to determine what interest rate the parties intended to apply.

*In Re Dominguez,* 995 F.2d 883, 886 (9th Cir.1993). Because the McGinnis Note does not explicitly state whether the interest rate is a simple rate or whether it is to be compounded annually, we consider extrinsic evidence to determine whether compound interest was intended by the parties.

The record does not indicate that Witt offered any extrinsic evidence regarding either McGinnis or Mastro's original intent, nor does Witt point to any such evidence in his briefing. Conversely, on cross-examination, the drafter of the McGinnis Note, John Sherwood, testified that Mastro intended the interest to be compounded monthly, but conceded that the more reasonable interpretation of the note is that interest is to be compounded annually. Also, on direct examination, Witt's own expert witness, Christopher Linscott, testified that the original note could reasonably be interpreted to require annual compound interest. Because Witt offered no evidence on the parties' original

intent regarding the interest rate, the only evidence available to the trier of fact was the evidence that Mastro intended the McGinnis Note to provide for compounding interest and Linscott's opinion that compound interest was a reasonable construction of the note. Based on this evidence, the only conclusion which could be reached is that the parties intended compound interest. Thus, the district court's conclusion to the contrary was in error. We hold the proper rate of interest is eighteen percent, compounded annually.

### D. *Attorneys' Fees and Costs*

Having concluded that Witt remains liable on the guaranty and that Mastro purchased the Sherwood Receivables free and clear of Witt's unperfected security interest, Witt is not the prevailing, successful party. Consequently, her cross-appeal seeking costs for accounting and attorneys' fees is moot. *See* Fed.R.Civ.P. 54(d) (allowing costs to prevailing party); A.R.S. § 12–341.01 (allowing award of attorneys' fees to successful party).

### IV.

### CONCLUSION

We conclude that Mastro purchased the Sherwood Receivables free of any interest Witt had in the collateral. Consequently, Witt remains liable on the guaranty. Also, we hold the McGinnis Note provides for compound annual interest. We remand to enable the district court to determine the exact amount due on the McGinnis Note, together with appropriate attorneys' fees and costs.

**REVERSED AND REMANDED.**