In re CAMP TOWN, INC., Debtor.

**NATIONSCREDIT COMMERCIAL CORPORATION, Plaintiff,**

v.

**CAMP TOWN, INC., Deutsche Financial Services Corporation, Citizens Bank of Las Cruces, Fleetwood Credit Corp., Bombardier Capital, Inc., Transamerica Commercial Finance Corporation, and First State Bank and Bill Sholer, Trustee, Defendants.**

**Bankruptcy No. 7–95–11879 MA.
Adv. No. 96–1002 M.**

United States Bankruptcy Court,
D. New Mexico.

June 10, 1996.

James L. Rasmussen, Karla Poe, Albuquerque, NM.

Hugh T. Brower, Martin, Lutz & Brower, P.C., Las Cruces, NM.

Jay D. Hertz, Albuquerque, NM.

Bill J. Sholer, Trustee, Albuquerque, NM.

## MEMORANDUM OPINION

MARK B. McFEELEY, Bankruptcy Judge.

THIS MATTER came before the Court upon the motion of NationsCredit Commercial Corporation of America for partial summary judgment regarding the validity, priority, and extent of security interests in used inventory claimed by NationsCredit and by Citizens Bank. The Court having listened to the arguments of counsel, reviewed the briefs and pleadings, and being otherwise fully advised grants summary judgment with respect to the validity and priority of the NationsCredit lien and denies summary judgment with respect to the extent of the NationsCredit lien.

## UNDISPUTED FACTS

1. On February 20, 1987, a financing statement was filed with the Secretary of State for the state of New Mexico in which

Camp Town, Inc. was the listed debtor and Chrysler First Wholesale Credit, Inc. ("Chrysler Wholesale") was the listed secured party. Michael Roberson signed the financing statement on behalf of Camp Town, Inc.

2. The collateral covered by this financing statement was described as follows:

> All of the Debtor's inventory, equipment, accounts, contract rights (including but not limited to any purchase and rental agreements), chattel paper, documents and general intangibles, of whatever kind or nature, wherever located, now owned or hereafter acquired, and all returns, repossessions, substitutions, replacements, parts, additions and accessions, thereto and thereof, and all proceeds, (including but not limited to cash, instruments, chattel paper, general intangibles and accounts) and products thereof.

3. On August 1, 1988, Camp Town, Inc. entered into a security agreement with Citizens Bank of Las Cruces in which the collateral was described as "[a]ll vehicles presently owned and hereafter acquired by debtor." This security agreement was signed by Michael Roberson and others on behalf of Camp Town, Inc.

4. On August 19, 1988, Citizens Bank perfected its security interest by filing a financing statement with the Secretary of State for the state of New Mexico. The financing statement listed Camp Town, Inc. as debtor, Citizens Bank of Las Cruces as secured party, and was signed by Michael Roberson. The description of collateral mirrored the security agreement.

5. On September 15, 1988, Chrysler Wholesale filed an amendment to the February 1987 financing statement, adding an address for the debtor in Las Cruces as Camptown, Inc. of Las Cruces. The amendment listed Camp Town, Inc. as debtor, at the same address as the original financing statement, and was signed by Michael Roberson for Camp Town. A zero was omitted in the reference to the file number of the original financing statement.

6. On August 17, 1990, Chrysler Wholesale filed an assignment of the February 1987 financing statement, as amended. The financing statement was assigned to Chrysler First Commercial Corporation ("Chrysler Commercial"), the surviving corporation of a merger between Chrysler Wholesale and Chrysler Commercial.

7. On August 21, 1990, Camp Town, Inc. and Chrysler Commercial entered into a security agreement granting to Chrysler Commercial a security interest in, among other things, all present and after-acquired inventory.

8. On April 10, 1991, Citizens Bank of Las Cruces filed an amendment to the August 1988 financing statement in which the description of collateral was expanded to include the following:

> All used recreational vehicle inventory now owned or hereafter acquired including but not limited to fold down trailers, pop-up trailers, camper units, travel trailer, motor homes located at 1285 Avenida de Mesilla, Las Cruces, N.M. including proceeds thereof.

9. On August 26, 1991, a timely continuation statement was filed by Chrysler Commercial.

10. On September 9, 1991, Chrysler Commercial filed an amendment of the financing statement to reflect a change of address for Chrysler Commercial.

11. On March 29, 1993, Chrysler Commercial filed an assignment of the financing statement, assigning all "rights, title and security interest contained in the original file number and amendment(s)" to NationsCredit Commercial Corporation.

12. On December 21, 1993, NationsCredit and Camp Town entered into a security agreement granting to NationsCredit a continuing security interest in, among other things, "all present or hereafter acquired inventory."

13. On June 23, 1995, Camp Town, Inc. filed for Chapter 11 relief.

14. After obtaining relief from the automatic stay, creditors of Camp Town who asserted security interests in the used inventory consented to the disposition of the used inventory by auction and private sale. Pro-

ceeds from those sales are being held pending final determination of the validity, priority, and extent of competing liens.

## DISCUSSION

The dispute between NationsCredit and Citizens Bank boils down to two distinct questions:

(1) Does the security interest granted to NationsCredit by Camp Town relate back to the date of the original financing statement and take priority over the security interest of Citizens Bank?

(2) Does the security interest granted to NationsCredit by Camp Town include the inventory located in Las Cruces, New Mexico?

With respect to the first question, the pivotal provision of New Mexico's Uniform Commercial Code is found at § 55–9–312(5)(a) which reads in pertinent part as follows:

> (5) In all cases not governed by other rules stated in this section ... priority between conflicting security interests in the same collateral shall be determined according to the following rules:
>
> > (a) conflicting security interests rank according to priority in time of filing or perfection. Priority dates from the time a filing is first made covering the collateral or the time the security interest is first perfected, whichever is earlier, provided that there is no period thereafter when there is neither filing nor perfection;

In the Official Comment to Section 55–9–312, one finds examples designed to illustrate the application of that section. In particular, Example 1 contains a fact situation strikingly like the facts presented in the instant case:

> Example 1. A files against X (debtor) on February 1. B files against X on March 1. B makes a nonpurchase money advance against certain collateral on April 1. A makes an advance against the same collateral on May 1. A has priority even though B's advance was made earlier and was perfected when made. It makes no difference whether or not A knew of B's interest when he made his advance.

In the case of NationsCredit and Citizens Bank, a longer and more complicated path leads from the filing of the original financing statement to the attaching of NationsCredit's security interest; the final result, however, is the same.

▇▇▇▇ The determination that NationsCredit is entitled to the priority of the original financing statement is based upon an analysis of both the continuity of the financing statement and the effect of the assignments made. The continuity of the financing statement is required in the final phrase of § 55–9–312(5)(a), "... **provided that** there is no period thereafter when there is neither filing nor perfection." (emphasis added). The sequence of filings—amendments, assignments, and continuations—by Chrysler Wholesale and Chrysler Commercial are timely and complete. No lapse in filing occurred. Citizens Bank points to the erroneous file number reference which appears in the amendment filed by Chrysler Wholesale on September 15, 1988, and suggests this error interrupts the chain of filing. The Court is not persuaded that a single-digit mistake in the file number runs afoul of N.M.Stat.Ann. § 55–9–402(8), which reads as follows:

> (8) A financing statement substantially complying with the requirements of this section is effective even though it contains minor errors which are not seriously misleading.

Minor errors which are not seriously misleading will not invalidate a financing statement or continuation statement which otherwise is in substantial compliance with statutory requirements. *In re Adam*, 96 B.R. 249 (Bankr.D.N.D.1989). Furthermore, a search of the records by Citizens Bank (or any other interested third party) would have been instituted using the debtor's name, not a filing number.

▇▇▇▇ Having determined that the filing of the financing statement continued without lapse from February 20, 1987, until the filing of Camp Town's Chapter 11 bankruptcy, the Court now turns to an examination of the assignment of rights under the financing statement. The Uniform Commercial Code

specifically provides for the assignment of rights in connection with security interests. *See* N.M.Stat Ann. § 55–9–405(2), (3). Under the U.C.C. provision, an assignee stands in the shoes of his assignor and "is the secured party of record." Nowhere do the statutes limit the number of times a financing statement may be assigned. Citizens Bank has provided no authority for the proposition that the rights of subsequent assignees are inferior to those of the original filer.

■ In the case of *Michel v. J's Foods, Inc.*, 99 N.M. 574, 661 P.2d 474 (1983), a bank created a security interest by filing a financing statement which covered a restaurant's operating equipment as collateral. The court held that the party who paid off the promissory note and other outstanding debts and who took assignment of perfected security interest stepped into shoes of bank and was entitled to rights and privileges enjoyed by bank, limited only by defenses that could be asserted against bank. The distinction in the present case, of course, is the assignment of the rights flowing from a financing statement alone rather than a perfected security interest. Significant rights of priority, as discussed above, exist in a financing statement alone, and these rights are equally as assignable. NationsCredit has stepped into the shoes of Chrysler Commercial. Chrysler Commercial had stepped into the shoes of Chrysler Wholesale, which had filed a valid financing statement prior in time to the filing by Citizens Bank.

It makes no difference that the advances to Camp Town made by NationsCredit, as assignee, came after the perfection of other security interests. In the case of *In re Robert B. Lee Enterprises, Inc.*, 980 F.2d 606 (9th Cir.1992), the Court of Appeals affirmed a bankruptcy court decision that an assignee of a secured party is entitled to the priority position of the secured party, even with respect to advances made by the assignee after intervening liens of other creditors.

There has been no lapse in the filing, and NationsCredit is the lawful assignee of all rights in the financing statement. The Court finds, based on these undisputed facts, that the perfection of the security interest granted to NationsCredit by Camp Town relates back to the original financing statement and is prior to the lien perfected by Citizens Bank.

■ This result accords with the policy behind New Mexico's system of "notice filing." The purpose of a financing statement is to notify third parties of the possibility of prior encumbrances and alert them to the need for investigation. *Mogul Enterprises, Inc. v. Commercial Credit Business Loans, Inc.*, 92 N.M. 215, 217, 585 P.2d 1096, 1098 (1978); *Valley Federal Savings Bank v. Stahl*, 110 N.M. 169, 793 P.2d 851 (1990). The purpose of filing a financing statement is to put others on notice that a security interest is claimed in particular property owned by a debtor. *In re Flores De New Mexico, Inc.*, 151 B.R. 571 (Bankr.D.N.M.1993). The Court notes that the initial financing statement filed in February of 1987 listed Camp Town, Inc. as debtor, was signed by Michael Roberson, and contained a comprehensive list of collateral. The information provided in this financing statement had been available for over 17 months when Citizens Bank elected to enter into a financing arrangement with the same corporation, signed by the same individual, and secured by collateral which was covered in the financing statement. Even the minor error in filing number of which Citizens Bank complains had not yet occurred, since the financing statement of Citizens Bank predates the amendment which contains the error. Accordingly, partial summary judgment is granted in favor of NationsCredit with respect to the validity and priority of its lien.

■ A second issue exists regarding the extent of the lien asserted by NationsCredit, and whether that lien extends to include certain inventory located in Las Cruces, New Mexico. Citizens Bank takes the position that the absence of a security agreement between Camp Town and Chrysler Wholesale, the original filer of the financing statement, prevents NationsCredit from proving the intention of the parties with respect to location of inventory. This argument disregards N.M.Stat.Ann. § 55–9–312(5)(a), since that statute allows the current security agreement between NationsCredit and Camp

Town to relate back to the financing statement. The Court is not required to discern the intentions of the parties at the time the financing statement was originally filed but instead to examine the intent of the debtor and the ultimate assignee of the financing statement. This intent is memorialized in the December 21, 1993, security agreement between Camp Town, Inc. and NationsCredit.

The security agreement between NationsCredit and Camp Town contains a description of collateral which grants NationsCredit a "continuing security interest in all present and hereafter acquired inventory of Dealer . . .". This language raises a question as to whether the parties intended to limit the inventory to one dealership or meant the word "dealer" to encompass both Camp Town outlets. The agreement is signed by the president of Camp Town and only an Albuquerque address is given. Despite the language contained in the financing statement, which provides for inventory "wherever located," the Court finds that genuine issues of material fact exist regarding the intent of the parties with respect to the Las Cruces inventory. The extent of NationsCredit's lien, and whether it includes inventory located at Camp Town's Las Cruces location, is not appropriate for summary judgment, and summary judgment on that issue is denied.

## CONCLUSION

For the foregoing reasons, summary judgment is partially granted in favor of NationsCredit, establishing the validity of NationsCredit's lien and the priority of that lien over the lien of Citizens Bank. With respect to the extent of NationsCredit's lien and whether that lien includes the Las Cruces inventory, summary judgment is denied. This opinion constitutes the Court's findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure. An Order and Judgment shall be entered accordingly.