661 P.2d 474

**Jean Charles MICHEL,
Plaintiff-Appellant,**

v.

**J'S FOODS, INC. and Jean Pierre
Gozard, Defendants-Appellees.**

**No. 14389.**

Supreme Court of New Mexico.

Feb. 10, 1983.

Rehearing Denied April 7, 1983.

Stephen Sprague, Albuquerque, for plaintiff-appellant.

Popejoy, Leach & Silko, Thomas L. Popejoy, Jr., Albuquerque, for defendants-appellees.

## OPINION

FEDERICI, Justice.

Jean Charles Michel, plaintiff-appellant (plaintiff), brought this action in the Ber-

nalillo County District Court against J's Foods, Inc. and Jean Pierre Gozard (Gozard), the defendants-appellees (defendants), to recover a money debt for back wages, for a determination of the rightful ownership of the corporation assets and for other such injunctive relief that would prevent defendant Gozard from asserting title to, or disposing of, the corporation's assets. The district court granted summary judgment in behalf of the defendants. Plaintiff appeals. We affirm.

The essential facts in this case are not in dispute. From January 1979 until October 1980, plaintiff and defendant Gozard were joint owners of all the stock of the corporation which owned and operated a restaurant in Albuquerque, New Mexico. In October 1980, plaintiff and defendant Gozard sold all of their stock in the corporation to defendant Gozard's mother and father under a written agreement. Thereafter, in early 1981, defendant Gozard's father died. The corporation was left with a variety of unpaid liabilities, including a delinquent bank note, which was secured by the corporation's operating equipment. Defendant Gozard, who was a co-guarantor on the note, paid off the outstanding balance and received an assignment of the security interest in the collateral. Additionally, a notice was sent to the corporation indicating defendant Gozard's intention to retain the collateral in satisfaction of the corporation's debt to him. Defendant Gozard has retained the operating equipment and continued to operate the corporation as a restaurant ever since. Plaintiff contends that as a result of defendant Gozard asserting full and complete title over the corporation's assets, plaintiff, and similarly situated creditors, have been deprived of a legal remedy. We disagree.

The issues on appeal are:

I. Whether the transfer of the corporation's assets to defendant Gozard, pursuant to Section 55–9–505(2), N.M.S.A.1978, is in violation of the Uniform Fraudulent Conveyance Act.

II. Whether defendant Gozard was entitled to retain the collateral in satisfaction of debts owed to him.

III. Whether the notice to the corporation of defendant Gozard's intention to retain the collateral was effective.

## I. Transfer of Corporation Assets.

■ Plaintiff's contention is that while there may have been "compliance with the mechanical requirements" of Section 55–9–505(2), nonetheless, this Court should look beneath a mechanical application of this section to see whether the plaintiff, as a creditor, is entitled to set aside the district court's summary judgment. Plaintiff relies upon *Reeves v. Foutz and Tanner, Inc.*, 94 N.M. 760, 617 P.2d 149 (1980) and a supposed violation of the Uniform Fraudulent Conveyance Act, Sections 56–10–1 through 56–10–13, N.M.S.A.1978, to support his contention.

Section 55–9–505(2) states in part:

(2) *In any other case involving* consumer goods or *any other collateral a secured party in possession may, after default, propose to retain the collateral in satisfaction of the obligation. Written notice of such proposal shall be sent to the debtor and * * * to any other secured party * * * who has duly filed a financing statement indexed in the name of the debtor in this state or is known by the secured party in possession to have a security interest in it.* If the debtor or other person entitled to receive notification objects in writing within thirty days from the receipt of the notification or if any other secured party objects in writing within thirty days after the secured party obtains possession the secured party must dispose of the collateral under Section 9–504 [citation omitted]. *In the absence of such written objection the secured party may retain the collateral in satisfaction of the debtor's obligation.* (Emphasis added.)

This section of the Uniform Commercial Code generally recognizes that a secured party, or an assignee of a secured party,

may frequently be better off without a resale of the collateral. Hence, this section sanctions an alternative arrangement on certain conditions, and with certain exceptions, whereby the secured party, or assignee, may keep the collateral as his own, upon giving notice to the debtor and other secured parties known to the person making the proposal. Annot., 55 A.L.R.3d 651 (1974); *Nelson v. Armstrong,* 99 Idaho 422, 582 P.2d 1100 (1978); *Haufler v. Ardinger,* 28 U.C.C.Rep. 893 (1979).

In this case, defendant Gozard became the assignee of the secured party when he paid off a promissory note to the American Bank of Commerce, in addition to other outstanding debts. In order to protect the position he had assumed, Gozard took an assignment of the bank's security interest that covered the restaurant's operating equipment. Gozard, therefore, was in possession of the collateral pursuant to the terms of the security agreement, as an assignee, as provided in Section 55-9-503, N.M.S.A.1978. *See Citizens National Bank v. Osetek,* 353 F.Supp. 958 (D.C.N.Y.1973). Gozard entered into active operation of the restaurant and has maintained it as a business ever since. He sent notice to the corporation that he intended to retain the operating equipment in satisfaction of the corporation's debt to him. There are no other secured parties in this case otherwise entitled to receive notice of Gozard's intention to retain the collateral. Defendant Gozard complied with the statutory requirements to retain the collateral in Section 55-9-505(2).

Plaintiff, on the other hand, undertook no affirmative action to secure his position, nor paid any amount of the debt owing on the promissory note, nor paid any amount of the other outstanding debts owed, nor demonstrated his interest to further participate in the operation of the business. We find no "circumstances" in the present case which show that defendant Gozard has failed to comply with the provisions set out in Section 55-9-505(2).

Plaintiff's reliance on *Reeves v. Foutz and Tanner, Inc., supra,* is misplaced. That case is authority for the proposition that, under Section 55-9-505(2), a creditor who has properly taken possession of collateral, and intends to retain possession thereof, must, if he intends to resell the collateral, account for any surplus from the sale to the debtor, pursuant to Section 55-9-504, N.M. S.A.1978. *Reeves* does not support the rule that one must look beyond the application of Section 55-9-505(2) to determine whether an unsecured creditor's rights are entitled to rise to a position equal to or greater than the rights of an assignee of a secured party who has otherwise declared his intention to retain the collateral under Section 55-9-505(2).

■ Further, in answer to plaintiff's contentions, we believe the Uniform Fraudulent Conveyance Act to be inapplicable. The purpose of that Act is to protect creditors when a *debtor* has made a conveyance of his property which diminishes the creditor's assets to the detriment of the rights of the creditor. *First Nat. Bank in Albuquerque v. Abraham,* 97 N.M. 288, 639 P.2d 575 (1982). In this case, the debtor is the corporation, and the corporation did not make a conveyance of the collateral to the prejudice of the plaintiff. Instead, defendant Gozard, as the assignee of the secured party, took possession of the collateral from the bank pursuant to Section 55-9-505(2). Accordingly, under the facts as they appear in the record in this case, and absent any badges or emblems of fraud alleged or proven, the provisions of the Uniform Fraudulent Conveyance Act are not controlling. *First Nat. Bank in Albuquerque v. Abraham, supra.*

## II. Retention of the Collateral.

■ With reference to this issue plaintiff contends: (1) that defendant Gozard was a surety, not a secured party, and therefore, the defendant could not have a secured interest in the collateral; and (2) even if

defendant Gozard was an assignee of a secured party, the assignment would be against public policy because it is in violation of the Uniform Fraudulent Conveyance Act. We disagree.

The Uniform Commercial Code specifically recognizes the rights of an assignee. Sections 55–9–318 and 55–9–405(2), (3), N.M.S.A.1978. Under these statutes, the assignee stands in the shoes of his assignor, subject to all equities and defenses which could have been raised by the debtor against the assignor, *Farmers Acceptance Corporation v. DeLozier,* 178 Colo. 291, 496 P.2d 1016 (1972). Here, the bank created a security interest by filing a financing statement covering the restaurant's operating equipment as collateral. By taking such an assignment of the perfected security interest, defendant Gozard stepped into the shoes of the bank and was entitled to the rights and privileges enjoyed by the bank, limited only by the defenses that could be asserted against the bank. Such an assignment is not a mere subrogation right of a surety. *Miller v. Wells Fargo Bank Intern. Corp.,* 540 F.2d 548 (2d Cir.1976).

### III. *Notice to the Corporation.*

Plaintiff does not dispute that the corporation received notice of defendant Gozard's proposal to retain the collateral in satisfaction of the debt. However, plaintiff claims that the notice was not effective because it was a sham notice since defendant Gozard, as assignee, sent notice to the corporation, which he was then operating. Plaintiff argues that the notice sent by Gozard was only in technical compliance with Section 55–9–505(2), and that this method of giving notice amounted to sharp business practice and an invalid attempt to defeat the interest of unsecured creditors in the corporation. We disagree.

The notice required by Section 55–9–505(2) is: "[w]ritten notice of such proposal shall be sent to the debtor and * * * to any other secured party who has a security interest in the collateral and who has duly filed a financing statement * * * or is known by the secured party in possession to have a security interest in it." Here, the corporation did not object to the retention of the collateral, nor was there any other person "entitled," as a secured party, to receive notice of defendant Gozard's intention.

Plaintiff could have become a party entitled to notice if he had obtained a security interest to secure payment of the corporation's debt to him. Plaintiff could also have become a party entitled to notice by paying off some of the corporation's debts, as did defendant Gozard. Instead, plaintiff undertook no action and elected to remain an unsecured creditor of the corporation. As we interpret Section 55–9–505(2), it does not require a secured party who decides to retain collateral in satisfaction of a debt to notify unsecured creditors. Plaintiff's rights are therefore confined by his own inaction. Defendant Gozard properly complied with the notice provision set forth in Section 55–9–505(2), thereby demonstrating a clear intent to retain the collateral. *Farmers State Bank in Afton v. Ballew,* 626 P. 337 (Okla.App.1981).

There being no material issues remaining in dispute, defendant is entitled to summary judgment as a matter of law. *Baca v. Britt,* 73 N.M. 1, 385 P.2d 61 (1963). The judgment of the trial court is affirmed.

IT IS SO ORDERED.

PAYNE, C.J., and RIORDAN, J., concur.