896 P.2d 1148

**STATE of New Mexico, ex rel., NEW MEXICO STATE HIGHWAY AND TRANSPORTATION DEPARTMENT, Plaintiff–Respondent,**

v.

**Edward BACA, Defendant–Petitioner.**

No. 21826.

Supreme Court of New Mexico.

May 8, 1995.

The Law Offices of Simon & Oppenheimer, Jane Bloom Yohalem, Morton S. Simon, Santa Fe, for petitioner.

Tom Udall, Atty. Gen., Arthur J. Waskey, Gen. Counsel, Richard Ferrary, Deputy Gen. Counsel, Santa Fe, for respondent.

## OPINION

MINZNER, Justice.

This appeal concerns the question of whether a district court may award attorney's fees against the State as a sanction for bad-faith litigation. We conclude that such a sanction may be proper under some circumstances, that the record does not support the award made, but that there may have been an evidentiary basis for a different award. We therefore affirm the Court of Appeals' reversal of the fee award, but we remand for further proceedings.

## I. FACTS

Plaintiff Edward Baca ("Baca") worked for the State Highway and Transportation Department ("Department") from 1971 until he was dismissed in 1987. During most of this period, Baca was active in and served as a chapter officer for the union that represents Department employees. Baca's duties with the Department involved frequent travel around the state, and, until 1984, he claimed Albuquerque as his home of record. In 1984, the Department transferred Baca to the newly-created District VI office, located in the

Grants–Milan area. Thereafter he notified the Department that he had moved his home of record to Milan, and he received a one-time moving allowance. Although the Department later challenged the propriety of this payment, Department officials eventually agreed that Baca was entitled to it. Baca paid rent, received mail, and maintained a telephone number and bank account in Milan.

In 1986, the Department conducted an internal investigation into alleged per diem abuses associated with the creation and staffing of the District VI office. A committee formed to investigate the matter focused on sixteen employees, including Baca, who had never moved their spouses to the Grants–Milan area but who claimed a change in their home of record. The committee determined that Baca and others had actually continued to reside in Albuquerque and had thus wrongfully collected per diem when they worked within thirty-five miles of Albuquerque. The committee recommended several employees, including Baca, for discipline. The chairman of the committee, D.K. Moore, stated that what an employee knows or believes to be true was pertinent to a disciplinary action. He later testified that the committee probably did not consider the employees' good faith. He also testified that it was impossible to define "home of record" in a manner that would apply to all situations.

In 1987, Baca's supervisor, Michael Barnes ("Barnes"), terminated Baca's employment. As grounds for the termination, Barnes cited Baca's submission of "claims for reimbursement that have been found to be in violation of the Per Diem and Mileage Act, Department Policy and the collective bargaining agreement." The Department's position was that, because of Baca's length of service, he should have known the correct application of the per diem rules. In a pre-termination hearing, Baca requested a judicial determination of the meaning of "home of record." Barnes did not act upon this request, nor did he attempt to determine whether Baca had in fact acted in good faith. Of the three employees who were determined to have received improper per diem payments, one employee immediately agreed to pay a fine and another resigned. Only Baca was dismissed.

Baca appealed his termination to the State Personnel Board pursuant to NMSA 1978, Section 10–9–18(A) (Repl.Pamp.1992). Prior to the Personnel Board hearing, the Department sought and obtained a writ of mandamus from the district court, which directed the Personnel Board hearing officer to quash an order compelling discovery. It was, however, subsequently quashed by the district court as improvidently granted.

Following a hearing on the merits, the Personnel Board hearing officer concluded that Baca's termination had been without just cause. Her report noted that Baca was an active union officer and that the Department had failed to discipline other employees who were also alleged to have wrongfully received per diem. The Personnel Board adopted the hearing officer's findings and conclusions in toto and ordered Baca reinstated. The Department appealed the Personnel Board's decision to the district court pursuant to Section 10–9–18(G), asserting four grounds for appeal. In the first appeal, the Department asserted that the following errors had occurred: (1) the Board failed to apply the applicable legal and contractual framework; (2) the recommended decision denied the Department due process of law; (3) evidence concerning the issue of the moving allowance was inadmissible; and (4) the Board erred in failing to consider the Department's exceptions. The district court reversed on the ground that the Personnel Board had erroneously refused to consider the Department's exceptions to its ruling. The court did not consider the merits of the other three asserted errors that comprised the Department's appeal.

On remand, the Personnel Board again adopted the hearing officer's findings and conclusions and ordered Baca's reinstatement. In addition, the Personnel Board found that "[t]he Department made no attempt to determine whether [Baca] met the criteria for having his home of record in Grants. . . . [and] acted unreasonably under all the circumstances." The Department again appealed to the district court, this time relying upon the three claimed errors that

the district court had not considered in the first appeal. The district court affirmed the Personnel Board and, in addition, found that the Department treated Baca differently and more severely because of his role as a union activist. Alternatively, it held that Baca had not violated per diem requirements. The court concluded that the Department's bad faith justified an award of attorney's fees. Following a hearing on the attorney's fee issue, the trial court entered supplemental findings and conclusions and awarded Baca $86,403.68 in attorney's fees. This award compensated Baca for fees incurred during both the administrative and district court proceedings.

The Department appealed the fee award to the Court of Appeals. In its opinion, the Court of Appeals reached at least three distinct holdings. First, it held that a New Mexico court may invoke its inherent power and award attorney's fees for bad faith litigation. *State ex rel. N.M. State Highway & Transp. Dep't v. Baca,* 116 N.M. 751, 754, 867 P.2d 421, 424 (Ct.App.1993), *cert. granted,* 116 N.M. 801, 867 P.2d 1183 (1994). Second, it held that in an appeal to district court from an administrative proceeding, a district court's inherent power would not permit the court to award attorney's fees for "the work done in the administrative proceedings." *Id.* at 755, 867 P.2d at 425. The Court of Appeals agreed with the Department that the district "court's power to award fees under [the bad faith] exception extends only to fees incurred in defending against the abusive practices in court and does not extend to any other fees incurred in connection with the cause of action or case being litigated." *Id.* at 753, 867 P.2d at 423. Accordingly, the Court of Appeals vacated the portion of the fee award that reimbursed Baca for fees incurred during the administrative proceedings. *Id.* at 755, 867 P.2d at 425. The Court of Appeals also determined that this Court's decision in *Torrance County Mental Health Program, Inc. v. New Mexico Health & Environment Department,* 113 N.M. 593, 830 P.2d 145 (1992), precluded any award of attorney's fees against the State, in the absence of enabling legislation, because such awards are punitive in nature. *Baca,* 116 N.M. at 756, 867 P.2d at 426. The Court of

Appeals therefore vacated the balance of the fee award.

We affirm the first two holdings. We reverse the third and remand.

## II. DISCUSSION

In reaching its first holding, the Court of Appeals determined that the bad-faith exception to the American Rule is consistent with the jurisprudence of New Mexico, and it embraced that doctrine. *Id.* at 754, 867 P.2d at 424. We recognize that the courts in a number of jurisdictions award attorney's fees as a sanction for bad faith or frivolous litigation. *See generally Western United Realty, Inc. v. Isaacs,* 679 P.2d 1063, 1067 n. 3 (Colo.1984) (en banc). Moreover, we agree with the Court of Appeals that similarities between New Mexico and federal law in this area warrant adoption of the rationale articulated by the United States Supreme Court in *Chambers v. NASCO, Inc.,* 501 U.S. 32, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991).

### A. Inherent Power

■■■ As the Court of Appeals recognized, both trial and appellate courts must have " 'inherent power to impose a variety of sanctions on both litigants and attorneys in order to regulate their docket, promote judicial efficiency, and deter frivolous filings.' " *Baca,* 116 N.M. at 754, 867 P.2d at 424 (quoting *Martinez v. Internal Revenue Serv.,* 744 F.2d 71, 73 (10th Cir.1984)). It has long been recognized that a court must be able to command the obedience of litigants and their attorneys if it is to perform its judicial functions. Such powers inhere in judicial authority and exist independent of statute:

Certain implied powers must necessarily result to our courts of justice, from the nature of their institution.... To fine for contempt, imprison for contumacy, enforce the observance of order, &c., are powers which cannot be dispensed with in a court, because they are necessary to the exercise of all others: and so far our courts, no doubt, possess powers not immediately derived from statute....

*United States v. Hudson,* 11 U.S. (7 Cranch) 32, 34, 3 L.Ed. 259 (1812).

■ In *Chambers*, the United States Supreme Court recognized that the inherent power of the federal courts encompasses the power to award attorney's fees as a sanction for bad faith or vexatious litigation or for defiance of a court order. 501 U.S. at 45–46, 111 S.Ct. at 2133–34. Moreover, the *Chambers* Court held that statutes and rules that explicitly provide for attorney's fee sanctions do not displace that authority. *Id.* at 46, 111 S.Ct. at 2133–34. This Court has previously recognized that the trial courts of this State must be able to command and enforce compliance with discovery orders. *See United Nuclear Corp. v. General Atomic Co.*, 96 N.M. 155, 239, 629 P.2d 231, 315 (1980), *appeal dismissed and cert. denied*, 451 U.S. 901, 101 S.Ct. 1966, 68 L.Ed.2d 289 (1981). We agree with the Court of Appeals that the reasoning of *Chambers* is consistent with our jurisprudence. We therefore affirm the first ruling of the Court of Appeals in *Baca*. A court may award attorney's fees in order to vindicate its judicial authority and compensate the prevailing party for expenses incurred as a result of frivolous or vexatious litigation.

■ The Court of Appeals struck down the administrative component of the award on the ground that a trial court's inherent powers do not extend to proceedings not occurring before that court or in defiance of that court's authority. *See Baca*, 116 N.M. at 755, 867 P.2d at 425. We agree with the Court of Appeals on this issue. In awarding fees under the bad-faith exception, a court cannot sanction conduct occurring before another tribunal unless that conduct is in direct defiance of the sanctioning court's authority. In *Chambers*, the United States Supreme Court upheld the district court's award of fees incurred during an administrative action before the Federal Communications Commission. However, the *Chambers* Court took pains to emphasize that Defendant Chambers' initiation of the FCC proceeding occurred in direct defiance of the district court's order. 501 U.S. at 57, 111 S.Ct. at 2139. In his brief to this Court, Baca offers little support for the proposition that a court's inherent powers permit it to sanction conduct occurring before another tribunal. Baca asserts that *Webb v. Board of Education*, 471 U.S. 234, 105 S.Ct. 1923, 85 L.Ed.2d 233 (1985), supports this contention. *Webb*, however, is distinguishable because that case involved the construction of a federal fee-shifting statute. *Webb* was not concerned with a court's inherent power to control litigation. *New York Gaslight Club, Inc. v. Carey*, 447 U.S. 54, 100 S.Ct. 2024, 64 L.Ed.2d 723 (1980), does lend support to Baca's position. Nonetheless, much of that support is diluted by the later decision in *Webb*.

In *Carey*, the Supreme Court largely relied upon statutory interpretation to determine that a civil rights plaintiff was entitled to recover attorney's fees incurred during proceedings before state and federal administrative agencies. At issue was a provision of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–5(k), which permits a court to award attorney's fees to a party prevailing in any action or proceeding before the court. The Supreme Court concluded that "Congress' use of the broadly inclusive disjunctive phrase 'action or proceeding' indicates an intent to subject the losing party to an award of attorney's fees and costs that includes expenses incurred for administrative proceedings." *Id.*, 447 U.S. at 61, 100 S.Ct. at 2029. The Court noted that federal law required Carey to initiate administrative proceedings before she could bring her Title VII claim in federal court. The Court also recognized that Congress intended for the fee-shifting provision to make it easier for poor plaintiffs to bring meritorious claims and reasoned that denying the recovery of administratively-incurred fees would "clash[ ] with this congressional design." *Id.* at 65, 100 S.Ct. at 2032.

In *Webb*, the Supreme Court seemingly placed a limitation on the holding of *Carey*. Webb, a discharged school teacher, appealed his dismissal to a state administrative board that was similar in nature to the State Personnel Board in the instant appeal. When the administrative board refused to order his reinstatement, Webb sued the county in federal court pursuant to 42 U.S.C. Section 1983 and other federal statutes. In the federal suit, Webb asserted that the county had violated his constitutional rights by discriminat-

**6**

ing against him on the basis of his race. Webb's federal claim succeeded, and he claimed attorney's fees pursuant to Section 1988, which permits a party prevailing in a Section 1983 claim to recover attorney's fees. The trial court awarded Webb for the fees he incurred in federal court, but not for those incurred in the administrative litigation. Webb appealed, asserting that he was entitled to fees for both the state administrative and federal court proceedings. Webb argued that there should be no distinction between administrative and federal court proceedings because in both proceedings his attorney was seeking to vindicate Webb's constitutional rights. *Webb,* 471 U.S. at 241–42, 105 S.Ct. at 1927–28.

In determining that Webb was not entitled to attorney's fees for the administrative litigation, the Supreme Court distinguished *Carey.* The court noted that *Carey* had construed a Title VII (of the Civil Rights Act of 1964) provision that specifically required claimants to pursue available state administrative remedies before proceeding to federal court. In contrast, Section 1983 had no such requirement, and Mr. Webb could have gone straight to federal court. *Webb,* 471 U.S. at 240–41, 105 S.Ct. at 1927–28.

Like the plaintiff in *Carey,* Mr. Baca had to go through the administrative proceeding before he could get into district court. Nonetheless, *Carey*'s relevance to the instant appeal is minimal, because *Carey* involved a federal fee-shifting statute. In both *Carey* and *Webb,* the Court's analysis focused upon determining and applying the will of Congress. Neither case involved a court's inherent power to award attorney's fees. In contrast, Mr. Baca has never asserted that his fee award is authorized by statute. In his briefs to this court, he relies entirely on the inherent power of the courts to justify the award. We hold that a court's inherent power only extends to conduct occurring before the court or in direct defiance of the court's authority.

### B. Torrance County and Governmental Immunity

■ We next consider whether a court can award attorney's fees against the State when the State is a litigant before that court. The Court of Appeals determined that even if the Department's bad faith did justify an attorney's fee award, such a sanction against a state agency would be precluded by this Court's holding in *Torrance County.* It is not. However, we understand the Court of Appeals' reasoning and take this opportunity to explain our prior holding.

In *Torrance County,* we faced the issue of whether punitive damages could be recovered against the State for a bad-faith breach of contract. We considered this issue in light of the fact that the Tort Claims Act expressly prohibits punitive damages, whereas a comparable contract claims statute is silent on the subject. 113 N.M. at 597–98, 830 P.2d at 149–50. *See* NMSA 1978, § 41–4–19(B) (Repl.Pamp.1989); NMSA 1978, § 37–1–23 (Repl.Pamp.1990). Although both parties to that appeal relied extensively upon statutory construction and legislative history argument, *see Torrance County,* 113 N.M. at 597–99, 830 P.2d at 149–51, we were unable to discern any legislative intent "one way or the other on the subject." *Id.* at 598, 830 P.2d at 150. We therefore balanced the policy interests favoring punitive damages against those favoring immunity. *Id.* at 600, 830 P.2d at 152. We recognized that government liability for punitive damages would deter the abuse of governmental power and promote accountability among government officials. We nevertheless found those important concerns to be outweighed by two countervailing considerations: (1) "the necessity to protect public revenues unless their diversion is specifically authorized by statute;" and (2) the injustice of punishing innocent taxpayers rather than the officials at fault. *Id.* In short, the decision in *Torrance County* involved the balancing of competing public policy concerns.

■ The present case lends itself to the same approach. The legislature has not enacted a statute that addresses the issue, although a number of statutes and court rules explicitly provide for the recovery of attorney's fees under a variety of circumstances. The legislature's silence does not foreclose this Court's recognition of a general bad-faith exception to the American Rule. *See Cham-*

*bers,* 501 U.S. at 45–46, 111 S.Ct. at 2133–34. Moreover, we have previously adopted new exceptions to the American Rule. *See Turpin v. Smedinghoff,* 117 N.M. 598, 601, 874 P.2d 1262, 1265 (1994) (clarifying that *Bassett v. Bassett,* 110 N.M. 559, 564, 798 P.2d 160, 165 (1990), holds that the partnership statutes provide the basis for an award of attorney's fees when there "has been a breach of fiduciary duty as a result of constructive fraud that results in actual harm or when one partner sues in order to maintain the common fund"). Because a court's inherent power is at the core of judicial authority, it is the province of this Court to define the contours of that power. *See Mowrer v. Rusk,* 95 N.M. 48, 52–54, 618 P.2d 886, 891–93 (1980). We will therefore resolve this issue by balancing the interests as we did in *Torrance County.*

In balancing these concerns, we note that there are certain checks upon an attorney's fee award that are absent from a punitive damages award. This Court has previously said that an award of attorney's fees pursuant to Rule 11 must rest upon a finding by the court that "the actions for which fees are sought reasonably were necessary to defend [or prosecute the] claim." *Rivera v. Brazos Lodge Corp.,* 111 N.M. 670, 675, 808 P.2d 955, 960 (1991). We see no reason why this restriction should not apply equally to an award of attorney's fees made pursuant to a court's inherent power. Moreover, we note that this requirement will serve as a general restraint on attorney's fee awards that is absent from purely punitive awards.

■■■ We also note that there is a compensatory aspect to attorney's fee awards that distinguishes them from awards for punitive damages. The purposes underlying punitive damages are punishment and deterrence. *See Jaramillo v. Providence Wash. Ins. Co.,* 117 N.M. 337, 345–46, 871 P.2d 1343, 1351–52 (1994) (en banc); SCRA 1986, 13–1827 (Repl.Pamp.1991). By their nature, punitive damages confer a windfall upon an otherwise fully-compensated plaintiff. *City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 267, 101 S.Ct. 2748, 2759–60, 69 L.Ed.2d 616 (1981). In *Torrance County,* we concluded that punitive damages, when assessed against the State, punish taxpayers rather

than wrongdoers. We also concluded that in such circumstances the justification for the punitive sanction is largely undermined. *See* 113 N.M. at 600, 830 P.2d at 152. This concern is less significant where attorney's fees are involved. While it is certainly true that attorney's fee awards are a punitive sanction, they also have a compensatory aspect, and whereas the punitive effect might be lost when an award is made against the State, the compensatory effect will not.

In its opinion, the Court of Appeals recognized that an attorney's fee sanction has both punitive and compensatory elements. The Court reasoned that because the "basis" for the award is punitive rather than compensatory, those awards are impermissible under *Torrance County. See Baca,* 116 N.M. at 756, 867 P.2d at 426. We did not intend in *Torrance County* to resolve all related issues. Rather, we today balance the competing interests, conclude that the court's authority to control the litigation and parties before it must be given greater weight, and therefore hold that our decision in *Torrance County* does not preclude a court from awarding attorney's fees against the State for bad-faith or vexatious litigation.

■■■ We note that all of the federal circuit courts that have addressed the issue have held that a court cannot award attorney's fees as a sanction for prelitigation conduct. *See Association of Flight Attendants, AFL–CIO v. Horizon Air Indus., Inc.,* 976 F.2d 541, 548–49 (9th Cir.1992). As our cases recognize, such an award may be authorized by statute. *See Jackson Nat'l Life Ins. Co. v. Receconi,* 113 N.M. 403, 420–21, 827 P.2d 118, 135–36 (1992). While the majority in *Chambers* did not express an opinion about the propriety of such an award, *see* 501 U.S. at 54 n. 16, 111 S.Ct. at 2137 n. 16, a four-justice dissent argued strongly that a court's inherent power could not reach such conduct. *See id.* at 60, 111 S.Ct. at 2141 (Kennedy, J., dissenting). We conclude that the district court's inherent authority does not extend to the conduct that gave rise to the underlying cause of action.

■■■ In *Torrance County,* this Court found that the depletion of public revenues

and the punishment of innocent taxpayers are important policy concerns that disfavor government liability for punitive damages. *See* 113 N.M. at 600, 830 P.2d at 152. We agree. Those same considerations argue against the assessment of attorney's fees against government litigants. Nevertheless, we conclude that those considerations must be subordinate to a court's authority to control the parties and the litigation before it. Accordingly, we reach a different result than we reached in *Torrance County*. However, we emphasize that a court should invoke its inherent powers sparingly and with circumspection. *See Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764, 100 S.Ct. 2455, 2463, 65 L.Ed.2d 488 (1980), in order to justify the balance we have struck.

### C. Were Sanctions Justified in This Case?

 Finally, we consider whether the facts of the instant case warrant the assessment of attorney's fees against the State. We initially decide what standard controls the district court's decision. We will apply an abuse-of-discretion standard of review on appeal. *See Chambers*, 501 U.S. at 55, 111 S.Ct. at 2138; *cf. United Nuclear Corp.*, 96 N.M. at 239, 629 P.2d at 315 (reviewing the imposition of discovery sanctions under an abuse-of-discretion standard).

 The trial court awarded Baca attorney's fees in the amount of $86,403.68. The district court's involvement with this case encompassed three distinct proceedings: (1) the mandamus proceeding; (2) the first appeal from the State Personnel Board; and (3) the second appeal from the State Personnel Board. Approximately 84% of this sum reflects the efforts of Baca's attorneys at the administrative level. We have concluded that the district court's inherent authority did not encompass attorney's fees Baca incurred during the administrative proceedings. The remainder of the fees reflect the efforts of Baca's attorneys during the two appeals to the district court. It is unclear from the record whether legal fees incurred during the mandamus proceedings in the district court are part of the administrative component or the appellate component.

Moreover, the district court did not make a finding that any of these grounds for appeal was frivolous or brought in bad faith. Instead, the district court found that the Department "acted in bad faith, vexatiously, wantonly and for oppressive reasons in dismissing [Baca] and in pursuing this litigation over the past four years." Such generalized conclusions, without more, do not justify a finding of bad faith sufficient to support an attorney's fee award. *Cf. Rivera*, 111 N.M. at 676–77, 808 P.2d at 961–62 (holding that an award of attorney's fees pursuant to Rule 11 must be supported by particularized findings of misconduct). To the extent that the court was sanctioning the Department for its bad-faith discharge of Baca, that was beyond the scope of its authority; the court's inherent powers do not extend to that prelitigation conduct. Rather, a court's inherent authority extends to all conduct before that court and encompasses orders intended and reasonably designed to regulate the court's docket, promote judicial efficiency, and deter frivolous filings.

We conclude that the record contains insufficient findings to support the award of attorney's fees to Baca. However, we are unable to determine as a matter of law that there was no basis for any award. Therefore, the district court's decision awarding attorney's fees to Baca must be reversed and the matter remanded for further proceedings.

We do not address in this opinion the question of whether the Department rationally distinguished Baca's entitlement to moving expenses to Milan from his entitlement to per diem for expenses in travel to Albuquerque either in dismissing him or in defending its actions on appeal by Baca to the State Personnel Board. *Cf. City of Farmington v. L.R. Foy Constr. Co.*, 112 N.M. 404, 816 P.2d 473 (1991) (discussing statutory authorization for attorney fees to prevailing defendant in defending groundless suit for insurance benefits). On remand, however, the district court may take into account the merits of the Department's position during the appellate component. During that component, the court's authority encompassed all orders in-

tended and reasonably designed to protect that authority.

## III. CONCLUSION

We affirm the Court of Appeals' adoption of the bad-faith exception to the American Rule. Likewise, we affirm the Court of Appeals' holding that a court's inherent power extends only to conduct occurring before the court or in direct defiance of the court's authority. We reverse the Court of Appeals opinion insofar as it holds that *Torrance County* prohibits a trial court from assessing attorney's fees against the State or its subdivision. Finally, we conclude that the decision awarding attorney's fees is not supported by sufficient findings. However, the record does not justify a decision remanding to district court with instructions to vacate the award and find for the Department as a matter of law. Rather, the award made should be vacated and the court should enter an amended judgment, consistent with this opinion, after giving the parties an opportunity to present such additional evidence and argument as the trial court in its discretion determines appropriate. The judgment of the Court of Appeals is affirmed in part, reversed in part, and the cause remanded. Baca shall recover his appellate costs.

**IT IS SO ORDERED.**

RANSOM and FRANCHINI, JJ., concur.