1998-NMCA-046

956 P.2d 837

**SECURITY PACIFIC FINANCIAL SERVICES, A DIVISION OF BANK OF AMERICA, FSB, Plaintiff–Appellee,**

v.

**SIGNFILLED CORP., Defendant–Appellant.**

**No. 17688.**

Court of Appeals of New Mexico.

Feb. 4, 1998.

**40**

Robert J. Muehlen, Kelly, Rammelkamp, Muehlenweg & Lucero, P.A., Albuquerque, for Appellee.

Paul S. Wainwright, Paul S. Wainwright, P.A., Albuquerque, for Appellant.

*OPINION*

ALARID, Judge.

1. Security Pacific Financial Services (Security Pacific) filed a complaint against George Turner, Robert Eden, and Signfilled Corporation for collection under an installment sales contract and for replevin and declaratory relief in connection with a mobile home. The trial court ruled in favor of Security Pacific on its complaint. Signfilled Corporation appeals this ruling; George Turner and Robert Eden do not. Therefore, our holding is confined to the portion of the judgment concerning Signfilled Corporation. As discussed in the opinion, we affirm the

judgment in part and we reverse in part. Finally, we deny the request for oral argument as unnecessary. *See County of Bernalillo v. Morris,* 117 N.M. 398, 403, 872 P.2d 371, 376 (Ct.App.1994).

**BACKGROUND**

2. George Turner (Turner) entered into a retail installment sales contract (the contract) and security agreement with Value Mobile Homes (Value) to purchase a mobile home. The contract granted to Value, the Seller, a security interest in the mobile home. Value assigned its rights, title, and interest in the contract to General Electric Credit Corporation (GECC). GECC was listed on the Certificate of Title for the mobile home as the first lienholder. Security Pacific then purchased the contract from GECC. The contract required Turner to pay for insurance on the mobile home, but he failed to make the required payments. When Turner was contacted by Security Pacific regarding the delinquent payments, he stated that Security Pacific should ask for payment from Robert Eden (Eden), his stepson, who was living in the mobile home. It is not clear whether Security Pacific asked Eden for the insurance payments, but no payments were made. As a result of the late insurance payments, Security Pacific issued a demand letter to Turner. In response to the demand letter, Eden told Security Pacific that he would not make the required payments unless his name was added to the contract. Security Pacific agreed to accept a credit application from Eden so that Eden's name might be added to the contract. Eden's application was approved but never consummated because Eden did not pay the required down payment. In addition, Turner was unwilling to provide his signature, which was required to allow Eden to assume the loan under the contract.

3. Signfilled Corporation (Signfilled) consists of Loretta Quintana (Quintana), the president of Signfilled, and Gerry Ferrara, an officer of Signfilled and Eden's sister. Quintana had been a close friend of Eden for twenty years. In July 1993, Quintana purchased all of the shares of the corporation from Eden. On July 1, 1993, Signfilled entered into a lease agreement with Eden al-

lowing Eden to lease space on land belonging to Signfilled for placement of the mobile home. Quintana testified that Eden never paid any rent under the lease agreement and that no legal action was taken to collect the rent.[1]

4. In August 1994, Signfilled gave notice to Security Pacific that it was asserting a landlord's lien against the mobile home for unpaid rent under its lease with Eden. Signfilled held an auction of the mobile home, which no one attended. Signfilled then submitted its own bid for the mobile home for the amount of the claimed landlord's lien. After Signfilled purchased the mobile home for the lien amount, Signfilled submitted documents to the Motor Vehicle Department pursuant to the claim of landlord's lien. In return, Signfilled received a Certificate of Title listing Signfilled as owner of the mobile home and removing GECC as lienholder. When Signfilled filed its landlord's lien, it knew that Turner was the owner of the mobile home, and that Security Pacific had a security interest in the mobile home.

5. Security Pacific received notice of Signfilled's claim of landlord's lien. Security Pacific did not receive any notice of the sale of the mobile home. In November 1994, Security Pacific received notice that title to the mobile home had been transferred from Turner to Signfilled. Security Pacific called Eden and asked him to return the mobile home, and a notice of default was sent to Turner. The contract provided that, in the event of default, the holder may pursue any rights and remedies available to the holder under the law as well as repossession and/or acceleration of Turner's indebtedness. On December 6, 1994, on the basis that Turner was in default under the terms of the contract, Security Pacific elected to accelerate the contract as allowed by its terms.

6. Security Pacific filed its complaint against Turner, Eden, and Signfilled. With respect to Signfilled, some Conclusions of Law entered by the trial court are as follows:

8. The landlord's lien claimed by Signfilled is invalid and void.

. . . .

15. Security Pacific is entitled to immediate possession of the Redman mobile home.

. . . .

18. Security Pacific is entitled to recovery from Signfilled of its damages resulting from the loss of its collateral, the Redman mobile home.

. . . .

20. Security Pacific suffered damages in the amount of the value of the Redman mobile home as of the date of Signfilled's conversion of the mobile home.

21. Security Pacific is entitled to recover from Signfilled its costs and attorney's fees in this action.

The trial court also entered a Judgment and Order of Replevin which stated:

2. Security Pacific is awarded judgment against Signfilled as follows: (I) the greater of the sum of (a) $16,298.00, plus interest from October 11, 1994 at the judgment rate of interest, and/or (b) the outstanding amount of the Judgment awarded Security Pacific against Turner set out [in the order], and (ii) Security Pacific's attorney's fees, expenses and tax in an amount to be determined by this Court[.]

In sum, the trial court found that Security Pacific was entitled to possession of the mobile home; that Signfilled had no interest in the mobile home; that Signfilled's actions constituted wrongful conversion of the mobile home; and that Security Pacific was entitled to recovery of interest, costs, and attorney fees. Following judgment in this case, a writ of replevin was issued for return of the mobile home to Security Pacific.

7. On appeal, Signfilled argues that its interest in the mobile home was superior to Security Pacific's interest and that the trial court erred in awarding judgment to Security Pacific and against Signfilled. Signfilled also argues that the trial court erred in awarding interest and attorney fees to Secu-

---

1. We note that despite this testimony, a statement purportedly signed by Quintana was prepared stating that Eden was "currently paid up in his rent." In processing Eden's application, Security Pacific relied on that document.

rity Pacific, and that the rate of interest applied to the judgment was incorrect. We discuss the issues below.

## DISCUSSION

### Security Interest in the Mobile Home

8. Signfilled makes various arguments pertaining to the validity of Security Pacific's interest in the mobile home. In particular, Signfilled argues that Security Pacific's interest was never perfected and the Certificate of Title was never changed to reflect Security Pacific's interest in the mobile home. As noted above, GECC held the mobile home's sales contract prior to its assignment to Security Pacific. The contract provided that the Buyer (Turner) granted to the Seller (or holder of the contract) a security interest in the mobile home and all the proceeds of the property. The security interest ensured payment and performance of Turner's obligations under the contract. Thus, the security interest was a "purchase money security interest" in that it was "taken or retained by the seller of the collateral to secure all or part of its price." *See* NMSA 1978, § 55–9–107(a) (1961).

9. Signfilled does not dispute GECC's status as holder of a perfected security interest. Furthermore, the fact that GECC was listed on the Certificate of Title as lienholder indicates that GECC had a perfected security interest. *See* NMSA 1978, § 55–9–302(3)(b) (1996) (filing of a financing statement not required to perfect security interest in property, such as mobile homes, covered by Sections 66–3–201–204); NMSA 1978, § 66–3–201 (1995) (procedures to be followed so that the holder of the security interest will be included on the Certificate of Title as a lienholder).

▇▇▇▇ 10. The contract also provided that it could be assigned by Seller to any person or entity and that all rights granted to the Seller under the contract would apply to the assignee. GECC sold its interest in the contract to Security Pacific. *See* NMSA 1978, § 56–1–6(A) (1965) (an assignee may purchase any retail installment contract from a seller). The assignment of a retail installment is valid as against those making a claim against the seller regardless of whether the assignment is filed or whether the buyer is provided notice. *See* NMSA 1978, § 56–1–6(B). As in this case, when a secured party assigns a perfected security interest there is no requirement that the assignment be filed "in order to continue the perfected status of the security interest against creditors of and transferees from the original debtor." *See* § 55–9–302(2). Therefore, Security Pacific was assigned the perfected security interest in the mobile home by GECC and the perfected status of the security interest was not altered despite the fact that Security Pacific never changed the Certificate of Title to reflect the change in lienholders. *See Michel v. J's Foods, Inc.*, 99 N.M. 574, 577, 661 P.2d 474, 477 (1983) (assignee stands in shoes of assignor). In other words, the security interest continued to be perfected after GECC transferred the contract to Security Pacific.

▇▇▇▇ 11. Signfilled claims that its interest in the mobile home was superior to Security Pacific's interest, particularly because it perfected its lien by foreclosing on the landlord's lien and obtaining a title to the mobile home. Under NMSA 1978, § 48–3–5 (1923) (prior to the 1995 and 1997 amendments):

A landlord shall have a lien on the property of their tenants which remains in the house rented, for the rent due, or to become due by the terms of any lease or other agreement in writing, and said property may not be removed from said house without the consent of the landlord, until the rent is paid or secured.

A landlord may assert a landlord's lien on the property of the landlord's tenants. The evidence in this case is that Eden, who was the lessee that signed the lease agreement with Signfilled, never owned the mobile home. Section 48–3–5 provides that a landlord's lien may only be claimed on property owned by a tenant. Accordingly, Signfilled could not assert a landlord's lien over the mobile home and Signfilled's title is invalid. *Cf. Hesselden v. Karman*, 67 N.M. 434, 437, 356 P.2d 451, 453 (1960) (citing proposition that when title to property has not passed to a tenant, a landlord's lien would not extend to such property).

▇▇▇▇ 12. Even if Signfilled had a valid landlord's lien, the perfected purchase money

security interest was superior to that landlord's lien. The security interest possessed by Security Pacific was perfected before any interest claimed by Signfilled under a landlord's lien. *See* NMSA 1978, § 55–9–312(5)(a) (1996) ("[C]onflicting security interests rank according to priority in time of filing or perfection."); *National Inv.Trust v. First Nat'l Bank,* 88 N.M. 514, 516, 543 P.2d 482, 484 (1975) (perfected security interest has priority over subsequent landlord's lien).

*Replevin/Conversion*

13. The trial court found that Signfilled had wrongfully converted the mobile home to its own use and that Security Pacific was entitled to issuance of a writ of replevin and return of the mobile home. Any person who has the right to the immediate possession of property that has been wrongfully taken or detained may bring an action of replevin for recovery of the property. *See* NMSA 1978, § 42–8–1 (1907). In addition to recovery of the property, a person bringing an action of replevin may recover "damages sustained by reason of the unjust caption or detention thereof." *Id.*

14. Security Pacific was entitled to bring its action of replevin for the recovery of the mobile home and for damages sustained by the unjust detention of the mobile home. *See* § 42–8–1. Security Pacific's security interest in the mobile home had priority over any other claimant. Signfilled used an invalid claim of lien to obtain a Certificate of Title listing it as owner of the mobile home. At the time that Signfilled obtained the altered Certificate of Title, it knew that Turner was the owner of the mobile home. Security Pacific was entitled to possession of the mobile home due to default by Turner and to the fact that Signfilled had wrongfully taken the mobile home.

15. The trial court found that "Signfilled's conduct causing the transfer of title in the [] mobile home from Turner to Signfilled and removing Security Pacific as registered lienholder, without the knowledge or consent of Security Pacific, constitutes the wrongful conversion of the [ ] mobile home[.]" Conversion is the unlawful exercise of dominion and control over property belonging to another in defiance of the owner's rights, or acts constituting an unauthorized and injurious use of another's property, or a wrongful detention after demand has been made. *See AAA Auto Sales & Rental, Inc. v. Security Fed. Sav. & Loan Ass'n,* 114 N.M. 761, 763, 845 P.2d 855, 857 (Ct.App. 1992). Security Pacific, a secured creditor, was entitled to bring an action for conversion. *Id.* The measure of damages for conversion is the value of the property at the time of conversion plus interest. *See Woods v. Collins,* 87 N.M. 370, 371, 533 P.2d 759, 760 (Ct.App.1975). As indicated by the facts, Signfilled asserted an invalid landlord's lien against the mobile home knowing that Eden was not the owner of the property. Signfilled took steps to gain title to the mobile home without providing notice of the sale to Security Pacific despite the fact that Signfilled knew that Security Pacific had a security interest in the mobile home. The facts in this case support the trial court's findings and conclusions that Signfilled wrongfully converted the mobile home to its own use.

16. As discussed above, Security Pacific was entitled to relief under the replevin statute. In addition, the evidence supported the trial court's finding that Signfilled had wrongfully converted the mobile home to its own use. Security Pacific, however, would not be entitled to both the return of the mobile home under the theory of replevin *and* damages under the theory of conversion in the amount of the value of the mobile home at the time of conversion. *See NIKA Corp. v. City of Kansas City, Mo.,* 582 F.Supp. 343, 365 (W.D.Mo.1983) (on conversion theory, plaintiff not entitled to both value of property and return of property); *Ducote v. City of Alexandria,* 677 So.2d 1118, 1122 (La.Ct.App.1996) (damages for conversion include return of property or, if property cannot be returned, value of property at time of conversion); *Hoffman Mgmt. Corp. v. S.L.C. of North America, Inc.,* 800 S.W.2d 755, 762 (Mo.Ct.App.1990) (ordinarily conversion damages consist of value of property at time of conversion, but when property returned to owner, damages consist of the difference in value at conversion and value at return plus reasonable value for the loss of

use). In addition, because Security Pacific has already replevied the mobile home, the statute which would allow Security Pacific an election between return of the property and the value of the property is inapplicable. *See* NMSA 1978, § 42–8–7 (1953) (if the plaintiff demands return of the property and waives seizure and delivery of the property, a writ need not be issued and the plaintiff shall have judgment for damages and will be able to elect to receive the return of the property *or* the value of the property). Therefore, as to the judgment finding in favor of Security Pacific under both a replevin theory and a conversion theory, Security Pacific is entitled only to relief in replevin—the return of the property plus damages for wrongful detention of that property. *See* § 42–8–1.

◼ 17. With respect to recovery in replevin, because the mobile home has been replevied by Security Pacific, the only damages left to be awarded to Security Pacific are damages for wrongful detention of the mobile home. Based on the requested findings of Security Pacific, the trial court found that the value of the mobile home on August 2, 1994, was $16,298.00. The only other evidence of value presented to the trial court was the value of the mobile home at the time of trial. Security Pacific's agent testified at trial that he believed the value of the mobile home at that time to be approximately $11,000.00. *See Kipp v. Lipp,* 495 N.W.2d 56, 58–59 (N.D.1993) (determination of diminished value of property can be based solely on owner's testimony). Accepting these values as the only evidence of the value of the mobile home at the time of conversion and at the time of trial, the diminution in value in the mobile home amounted to $5,298.00. We are of the opinion that our replevin statute includes depreciation or diminution in value of property as an item of "damages sustained by reason of the unjust caption or detention" of property. *See Hyde v. Elmer,* 14 N.M. 39, 44, 88 P. 1132, 1133 (1907) (if property has been delivered on a writ of replevin, person entitled to possession of property is also entitled to damages for money that will compensate for the injury sustained by reason of the wrongful taking including any depreciation in value that was sustained while the property was wrongfully detained). Other

jurisdictions agree. *See, e.g., United Jersey Bank Southwest v. Keystone Collision, Inc.,* 482 F.Supp. 71, 72 (E.D.Pa.1979) (corporation entitled to replevin of vehicle if it is shown that value of vehicle had decreased during wrongful possession, and therefore entitled to return of vehicle and damages equal to diminution in value of vehicle); *White Motor Credit Corp. v. Sapp Bros. Truck Plaza, Inc.,* 197 Neb. 421, 249 N.W.2d 489, 493–94 (1977) (statute language broad enough to allow recovery for depreciation or deterioration of property when returned; damages equal to difference in value at time of taking and value at time of trial), *overruled on other grounds by United States Nat'l Bank v. Atlas Auto Body, Inc.,* 214 Neb. 597, 335 N.W.2d 288–290 (1983); *Brook v. James A. Cullimore & Co.,* 436 P.2d 32, 35 (Okla.1967) (in replevin action, if property has deteriorated on return, defendant is liable for difference in value when property taken and when property returned); *Taylor v. Graver Tank & Mfg. Co. Inc.,* 344 P.2d 1045, 1048–49 (Okla.1959) (if value at time of return is different than value at time of taking, plaintiff entitled to damages for the difference where damages based on competent evidence and damages do not exceed purchase price plus interest less payments made by vendee). Therefore, Security Pacific is entitled to collect $5,298.00 in damages from Signfilled.

◼ 18. We base our holding, in part, on the trial court's finding that the value of the mobile home on August 2, 1994, was $16,298.00. Signfilled argues that it "believes that the evidence does not support a finding that the value of the mobile home purchased over ten years ago was worth more at trial than it was when purchased[.]" While Signfilled includes in its brief a comment pertaining to the trial court's finding, the comment is included only in the statement of facts and there is no argument or authority accompanying it. At the trial level, Signfilled did not submit specific findings on the value of the mobile home and there is no indication that Signfilled presented any evidence of value. Therefore, Signfilled has waived any findings on that issue and cannot obtain review in this Court of the evidence

pertaining to those findings. *See Pedigo v. Valley Mobile Homes, Inc.*, 97 N.M. 795, 798, 643 P.2d 1247, 1250 (Ct.App.1982) (defendant who did not request specific finding on calculation of mileage expenses cannot obtain review of the issue on appeal); *Smith v. Galio*, 95 N.M. 4, 8, 617 P.2d 1325, 1329 (Ct.App. 1980) (shareholder did not request finding regarding value of shares so appellate court cannot consider claimed error by trial court). Moreover, Signfilled did not sufficiently argue the issue on appeal by merely including the comment in the statement of facts in the brief in chief. *See State v. Clifford*, 117 N.M. 508, 513, 873 P.2d 254, 259 (1994) (mere reference to claimed error in a conclusory statement was insufficient to raise issue on appeal); *Perez v. Gallegos*, 87 N.M. 161, 162, 530 P.2d 1155, 1156 (1974) (mere challenge to finding by parenthetical note in statement of proceedings resulting in failure to clearly point out error by trial court is insufficient to raise issue on appeal).

### Interest

19. Awarding the return of the mobile home and diminution in its value makes Security Pacific whole. Granting interest as well would result in duplicate recovery.

### Attorney Fees/Costs

20. Signfilled claims that the trial court erred in awarding a judgment against Signfilled which included attorney fees. The general rule is that absent statutory authority or rule of court, attorney fees are not recoverable as an item of damage. *See Jemez Properties, Inc. v. Lucero*, 94 N.M. 181, 186, 608 P.2d 157, 162 (Ct.App. 1979). Exceptions to the general rule include instances where the other party engages in bad faith, or frivolous litigation practices before the trial court in direct defiance of its authority. *See State ex rel. New Mexico State Highway and Transp. Dep't v. Baca*, 120 N.M. 1, 5, 896 P.2d 1148, 1152 (1995). Trial courts may impose sanctions for misconduct by an award of attorney fees where the conduct occurred before the trial court and does not include prelitigation conduct. *Id.* at 8, 896 P.2d at 1155.

21. Against Signfilled, Security Pacific filed a claim for replevin, a claim for wrongful conversion, and a claim for declaratory judgment. Under any of these theories, attorney fees are not recoverable by rule of law or by statute. There is no agreement between Security Pacific and Signfilled which would require Signfilled to be responsible for attorney fees. Furthermore, there is nothing to indicate that the award of attorney fees would be justified under one of the exceptions to the general rule concerning attorney fees.

22. Security Pacific argues that the attorney fees are recoverable as expenses incurred in "pursuit" of the mobile home. Attorney fees have sometimes been included as damages when they are expended to locate converted property. *See State v. Whitaker*, 110 N.M. 486, 495, 797 P.2d 275, 284 (Ct.App.1990). However, when the attorney fees are incurred in the litigation that follows the location of the property, they are not included as damages. *See Security–First Nat'l Bank v. Lutz*, 322 F.2d 348, 352 (9th Cir.1963) (in conversion action, expenses incurred in preparation for litigation and not in pursuit of property cannot be allowed as damages). With respect to costs, they are "allowed as a matter of course to the prevailing party[.]" *See* Rule 1–054(E) NMRA 1998.

### CONCLUSION

23. Based on the foregoing, we hold that Security Pacific is entitled to recover from Signfilled $5,298.00 in damages; return of the mobile home, and costs as awarded by the trial court. The award of attorney fees is reversed.

24. **IT IS SO ORDERED.**

WECHSLER and BUSTAMANTE, JJ., concur.