UNITED STATES NATIONAL BANK, APPELLEE, V.
ATLAS AUTO BODY, INC., APPELLANT.
335 N.W.2d 288

Filed June 17, 1983. No. 81-738.

Tim J. Kielty of Gast & Kielty, for appellant.

Thomas M. Locher of Hansen, Engles & Locher, P.C., for appellee.

KRIVOSHA, C.J., BOSLAUGH, McCOWN, WHITE, HASTINGS, CAPORALE, and SHANAHAN, JJ.

KRIVOSHA, C.J.

This replevin action was filed in the municipal court of Omaha, Douglas County, Nebraska, by the United States National Bank (U.S. National) to obtain possession of a 1979 Volkswagen automobile. The bank was the holder of a valid purchase money security interest in that vehicle. The municipal court found that Atlas Auto Body, Inc. (Atlas), by reason of an artisan's possessory lien for labor, materials, and storage, had a superior right to the collateral in question under Neb. U.C.C. § 9-310 (Reissue 1980). On appeal to the District Court the judgment was reversed and the cause remanded to the municipal court with directions to place U.S. National in possession of the collateral and to determine the amount of damages, if any, due and owing the bank for wrongful detention. From that judgment Atlas has appealed to this court. It has assigned two errors. The first assignment claims that the District Court erred in finding that U.S. National has a superior right in the collateral. The second assignment claims that the District Court erred in not permitting Atlas an artisan's lien for storage charges.

The parties have stipulated as to the facts in this case. On March 10, 1979, Thomas L. Sheppard, do-

ing business as T & A Leasing, purchased a 1979 Volkswagen Dasher from Westroads Volkswagen-Mazda (Westroads). On that day Sheppard executed and delivered a written promissory note to Westroads. Westroads in turn assigned all its right, title, and interest to this note to U.S. National. The Volkswagen Dasher was pledged as security for this note. In return for and in reliance on this pledge and note, U.S. National extended Sheppard a loan of $8,919 at an interest rate of 12 percent per annum. This money was given so as to enable Sheppard to purchase this automobile, thus giving U.S. National a valid purchase money security interest in the Dasher. This security interest is noted on the face of the certificate of title to this automobile and is the first such interest noted thereon. This certificate was in the possession of U.S. National.

Sheppard has defaulted on his note, leaving $2,010 plus interest unpaid. As a result of this default, U.S. National, on December 23, 1980, submitted to the clerk of the Douglas County Motor Vehicle Division an affidavit of repossession and the original certificate of title.

On or about February 20, 1980, Sheppard took the Dasher to Atlas for the purpose of having it repaired. After these repairs were made Atlas attempted to but was unable to contact Sheppard. The fair and reasonable cost of these repairs is $350. At the time Atlas took possession of this Dasher, Atlas did not see its certificate of title, but did see the registration for the vehicle, which carried the name of Thomas L. Sheppard.

Both plaintiff and defendant have attempted to but are unable to find or contact Thomas L. Sheppard. They both also remain unpaid. It is agreed that they both have a superior right to this automobile over Sheppard. This collateral remains in the possession of Atlas.

The only question presented by this appeal is, Does a party having a prior lien on a motor vehicle

noted on the vehicle's certificate of title take priority over the subsequent lien of an artisan arising from repairs and services rendered in the artisan's ordinary course of business? In short, who, as between U.S. National and Atlas, has the superior right to this vehicle?

Atlas argues that under the provisions of § 9-310 it has a superior lien over the lien held by U.S. National. Generally, § 9-310 gives parties in the position that Atlas is in here priority over earlier perfected security interests. "When a person in the ordinary course of his business furnishes services or materials with respect to goods subject to a security interest, a lien upon goods in the possession of such person given by statute or rule of law for such materials or services takes priority over a perfected security interest *unless the lien is statutory and the statute expressly provides otherwise.*" (Emphasis supplied.) The purpose behind this statute is stated in the Comments to this section: "To provide that liens securing claims arising from work intended to enhance or preserve the value of the collateral take priority over an earlier security interest even though perfected." § 9-310, Comment 1. Clearly, this statute provides that artisans, who in the ordinary course of business enhance the value of an item by services and materials rendered, have an interest in that item, to the extent of the value of those services and materials, which is superior to other interests even if they be prior perfected security interests.

U.S. National, on the other hand, argues that under the provisions of Neb. Rev. Stat. § 60-110 (Reissue 1978) its lien is prior and therefore superior to the lien of Atlas. While this statute was originally enacted before the Uniform Commercial Code, it has since been amended to read in part as follows: "The provisions of article 9, Uniform Commercial Code, shall never be construed to apply to or to permit or require the deposit, filing or other record whatsoever of a security agreement, conveyance intended

to operate as a mortgage, trust receipt, conditional sales contract, or similar instrument, or any copy of the same covering a motor vehicle. *Any mortgage, conveyance intended to operate as a security agreement as provided by article 9, Uniform Commercial Code*, trust receipt, conditional sales contract or other similar instrument covering a motor vehicle, if such instrument is accompanied by delivery of such manufacturer's or importer's certificate and followed by actual and continued possession of same by the holder of said instrument or, *in the case of a certificate of title, if a notation of same has been made by the county clerk on the face thereof, shall be valid as against the creditors of the debtor, whether armed with process or not, and subsequent purchasers, secured parties and other lienholders or claimants* but otherwise shall not be valid against them, except that during any period in which a motor vehicle is inventory, as defined in subdivision (4) of section 9-109, Uniform Commercial Code, held for sale by a person or corporation who is licensed as provided in Chapter 60, article 14, and is in the business of selling motor vehicles, the filing provisions of article 9, Uniform Commercial Code, as applied to inventory, shall apply to a security interest in such motor vehicle created by such person or corporation as debtor without the notation of lien on the instrument of title.'' (Emphasis supplied.) Further, U.S. National argues that our decision in *White Motor Credit Corp. v. Sapp Bros. Truck Plaza, Inc.*, 197 Neb. 421, 249 N.W.2d 489 (1977), supports its position in this case. In *White Motor* we found that, under § 60-110, White Motor had a superior interest in these vehicles over that of the artisan, Sapp Brothers. In the *White Motor* case, however, Sapp Brothers did not have a possessory lien under Neb. Rev. Stat. § 52-201 (Reissue 1978), and therefore § 9-310 did not apply. Further, Sapp Brothers did not contest the trial court's holding that White Motor was entitled to possession. It therefore is not authority in this case.

To the extent, however, that *White Motor, supra*, is in conflict with our decision herein, it is overruled.

Section 60-110 does not create a lien. Rather, it is what can be described as a recording statute. Absent the specific provisions of § 60-110, one seeking to obtain a lien against a motor vehicle by reason of a security agreement would be compelled to file the security agreement with the county clerk in the county of the debtor's residence, if a resident of this state, or the county clerk of the county where the collateral is located at the time of the execution of the security, if the debtor is a nonresident of this state. See Neb. U.C.C. § 9-401 (Reissue 1980). Section 60-110 specifically provides that notwithstanding the provisions of article 9 of the Uniform Commercial Code, no filing need be made with any county clerk, but, rather, the notation of the lien is to be made upon the certificate of title in the county in which the title was issued. Once that is done, then the secured party has a valid lien as against creditors of the debtor, whether armed with process or not, and *subsequent* purchasers, secured parties, and other lienholders or claimants who would otherwise claim that they were superior by reason of the lienholder's failure to properly file in accordance with article 9 of the Uniform Commercial Code.

What must be kept in mind is that § 60-110 does not create the lien. That is to say, § 60-110 does not create a statutory lien but, rather, only the manner in which a nonstatutory lien, once obtained, may be perfected by filing. A statutory lien, on the other hand, is simply what the name implies—a lien created by an act of the Legislature. Examples of statutory liens would be liens for nonpayment of taxes, or nonpayment of government fees, or matters of similar import. For but a few examples, see Neb. Rev. Stat. §§ 14-557, 15-819, 16-702, 21-323 (Reissue 1977), and §§ 77-203 and 77-208 (Reissue 1981).

A reading of § 9-310 makes no exception, and we see no reason why we should read into § 9-310 lan-

guage excluding motor vehicles when such was not the apparent intent of the Legislature. The Comments to § 9-310 support that view. Comment 2 reads in part: "Apart from the Uniform Trust Receipts Act which had a section similar to this one, there was generally no specific statutory rule as to priority between security devices and liens for services or materials. Under chattel mortgage or conditional sales law many decisions made the priority of such liens turn on whether the secured party did or did not have 'title'. This section changes such rules and makes the lien for services or materials prior in *all cases* where they are furnished in the ordinary course of the lienor's business and the goods involved are in the lienor's possession. Some of the statutes creating such liens expressly make the lien subordinate to a prior security interest. This section does not repeal such statutory provisions. If the statute creating the lien is silent, even though it has been construed by decision to make the lien subordinate to the security interest, this section provides a rule of interpretation that the lien should take priority over the security interest." (Emphasis supplied.) We note that the Comments to § 9-310 were adopted by the Legislature at the same time that the act itself was adopted.

Cases in Nebraska which had previously held that the security interest took priority over the chattel mortgage or conditional sales contract were bottomed upon the notion that the conditional vendor or mortgagor did not have "title" to the vehicle. That, of course, is no longer essential in the scheme of things.

A further reason for construing the statutes as we do is a reading of § 52-201, which grants to an artisan a possessory lien for services rendered. Section 52-201 provides: "Any person who makes, alters, repairs or in any way enhances the value of any vehicle, automobile . . . at the request of or with the consent of the owner, or owners thereof, shall have a

lien on such vehicle, automobile . . . while in his possession, for his reasonable or agreed charges for the work done or material furnished, *and shall have the right to retain such property until such charges are paid.*" (Emphasis supplied.) If we were to hold, therefore, that § 60-110 was an exception to § 9-310, we would in effect be repealing the right of a possessory lien on an automobile granted to an artisan under § 52-201, for, obviously, if § 60-110 grants to a secured party superior rights over an artisan claiming under both § 52-201 and § 9-310, then the secured mortgagee would have a right to replevin the vehicle from the artisan, or at least to proceed to foreclose its lien, thereby divesting the artisan of its possessory lien. We find no basis to conclude that the Legislature intended to impart secured parties such authority by virtue of § 60-110. We believe that all of these statutes can be read together and have meaning and effect if we read § 60-110 to be a filing statute and not a statute creating a statutory lien and therefore an exception to § 9-310. The District Court was therefore in error in holding that U.S. National's lien was superior to the artisan's lien held by Atlas.

Our holding, however, as to the prior lien of Atlas is only to the extent of the repairs to the vehicle in the amount of $350 and not to the purported storage charges. In order for Atlas to retain its possessory lien under § 52-201, it is required by law to maintain possession of the vehicle, thereby storing the vehicle until it determines to foreclose on said vehicle. This did nothing to "enhance" the value of the vehicle, as contemplated by § 52-201. It would be inconsistent to grant, on the one hand, the artisan a possessory lien necessary in order to gain superior rights over all other lienholders and then permit the artisan to likewise maintain a lien for storage charges, absent some showing that the artisan was regularly in the business of storing vehicles. See, *Mack Motor Truck Corporation v. Wolfe*, 303 S.W.2d 697 (Mo. App. 1957). We therefore hold that Atlas has a lien

for the repairs in the principal sum of $350, superior to that of U.S. National, but not with regard to its alleged storage lien. The judgment of the District Court is in part affirmed and in part reversed.

AFFIRMED IN PART, AND IN PART REVERSED.

WHITE, J., dissenting.

Faced with an obvious choice between certainty and doubt in the law of priority of liens on motor vehicles, the majority has chosen doubt. However appealing the pleas of the artisan to priority, we should not exclude from our consideration in these matters Lord Coke's observation that the aim of the law ought to be certitude.

HASTINGS and SHANAHAN, JJ., join in this dissent.