753 N.W.2d 361 (2008)
16 Neb. App. 783
Steven M. JACOB, appellant and cross-appellee,
v.
Margaret V. SCHLICHTMAN, formerly known as Margaret Shuck, Special Administrator of the Estate of Melody J. Hopper, deceased, appellee and cross-appellant.
No. A-07-180.
Court of Appeals of Nebraska.
June 17, 2008.
*364 Steven M. Jacob, pro se.
Thomas E. Zimmerman, of Jeffrey, Hahn, Hemmerling & Zimmerman, P.C., Lincoln, for appellee.
SIEVERS, MOORE, and CASSEL, Judges.
SIEVERS, Judge.
Steven M. Jacob is currently serving a life sentence following his conviction of first degree murder in the death of Melody J. Hopper. See State v. Jacob, 253 Neb. 950, 574 N.W.2d 117 (1998). Hopper's mother, Margaret V. Schlichtman, formerly *365 Margaret Shuck, filed a damage suit against Hopper's assailant, Jacob. After summary judgment on liability was entered for Schlichtman, the matter of damages for Hopper's death was tried, and a verdict for $734,704 was rendered by a Lancaster County jury on April 13, 1992. That judgment was reversed in Shuck v. Jacob, 250 Neb. 126, 548 N.W.2d 332 (1996), because Jacob's conviction that was the sole basis for the summary judgment on liability was not then final, although now it is.
Thereafter, Jacob commenced this replevin action against Schlichtman to recover items of personal property which he claims were wrongfully executed upon. The trial court ruled as a matter of law that the attachment was wrongfula finding not challenged by Schlichtman. The matter went to trial on damages, and the jury awarded Jacob $14,805.08 in damages. However, the trial judge granted Schlichtman's motion for judgment notwithstanding the verdict against Jacob, finding that the evidence allowed a damage award of only $2,805.08. Jacob appeals this action by the trial court, as well as several other collateral issues. We affirm the trial court's reduction of Jacob's judgment against Schlichtman.

FACTUAL AND PROCEDURAL BACKGROUND
On August 2, 1989, Hopper was shot, and on August 7, she died from her wounds. On August 4, Schlichtman obtained an order for attachment of Jacob's property including the property involved in this lawsuit. The attachment order included a life insurance policy and shares of stock in Legacy Technologies Ltd. (Legacy). Jacob's life insurance policy and the shares of stock were sold at a public auction on June 9, 1992, for $6,000 each to Schlichtman. The insurance policy was later cashed in by Schlichtman for $2,805.08.
However, the wrongful death judgment was reversed on appeal, and Jacob moved the district court to vacate the sale of his insurance policy and stock. The district court did so. Jacob then tiled a replevin action, seeking the return of his property and damages. Jacob obtained partial summary judgment on the issue of liability, and the only issue tried in this case was the matter of damages. Therefore, we do not discuss any liability issues.
Prior to the trial on damages, Jacob requested a transport order, because he was (and is) incarcerated. Jacob was required to pay the transportation costs, $548, and he now seeks to have such costs paid by Schlichtman.
At trial, the jury found in favor of Jacob, awarding him damages of $8,805.08 for his life insurance policy and $6,000 for his stock shares. On October 19, 2006, judgment was entered for Jacob for $14,805.08.
Jacob filed a motion to alter or amend, requesting prejudgment interest on his award; he also filed a motion for his costs. Schlichtman filed a motion for judgment notwithstanding the verdict, claiming the evidence was insufficient to support the jury's verdict. The trial court reduced Jacob's award to $2,805.08 and awarded him 12 percent prejudgment interest on that judgment beginning June 9, 1992, the date the policy was sold at public auction to Schlichtman. Jacob timely appealed; Schlichtman cross-appealed.

ASSIGNMENTS OF ERROR
Jacob assigns the following errors to the district court: (1) requiring him to pay his own transportation costs, (2) not awarding him costs, (3) granting Schlichtman's motion for judgment notwithstanding the verdict, and (4) being biased against him. In *366 her cross-appeal, Schlichtman asserts that the district court's award of prejudgment interest was error.

STANDARD OF REVIEW
The action of the trial court in taxing costs is not review-able unless an abuse of discretion is shown. Hein v. M & N Feed Yards, Inc., 205 Neb. 691, 289 N.W.2d 756 (1980).
To sustain a motion for judgment notwithstanding the verdict, the court resolves the controversy as a matter of law and may do so only when the facts are such that reasonable minds can draw but one conclusion. Eyl v. Ciba-Geigy Corp., 264 Neb. 582, 650 N.W.2d 744 (2002).
Statutory interpretation presents a question of law. When reviewing questions of law, an appellate court has an obligation to resolve the questions independently of the conclusion reached by the trial court. Whipps Land & Cattle Co. v. Level 3 Communications, 265 Neb. 472, 658 N.W.2d 258 (2003).

ANALYSIS

Jacob's Costs.
Jacob asserts that the district court should have awarded him his costs based on Neb.Rev.Stat. § 25-1708 (Reissue 1995). Section 25-1708 provides the following: "Where it is not otherwise provided by this and other statutes, costs shall be allowed of course to the plaintiff, upon a judgment in his favor, in actions for the recovery of money only, or for the recovery of specific real or personal property."
Jacob prevailed in his action to recover in this replevin action. Therefore, he is entitled to costs, and in the district court's order of January 23, 2007, costs were in fact awarded to him.
Jacob's real complaint is that his transportation costs of slightly over $500 were not part of the court's award of costs. Jacob argues that Neb.Rev.Stat. § 25-1233 (Cum.Supp.2006) requires Schlichtman to pay for his transportation costs. However, Jacob's transportation costs as provided for by § 25-1233 are not the type of costs § 25-1708 contemplates taxing to the losing party, because Jacob incurred such costs under § 25-1708 solely to secure his attendance at trial in his capacity as a party to the lawsuit. Jacob's transportation costs arise because he is incarcerated and must be supervised by personnel from the Department of Correctional Services if he is to travel to and attend a trial. Jacob cannot get himself to the courthouse, because he is an incarcerated felon, meaning that he must be physically transported by prison authorities and that the public must be protected and escape prevented. In other words, the transportation and security costs at issue arise because of Jacob's status as a convicted felon.
Jacob's claim that these costs should be taxed to Schlichtman is akin to a plaintiff's issuing a subpoena to himself or herself and then relying upon such subpoena, seeking to have fees and mileages for his or her own attendance at trial taxed against the opposing party. Such a result or procedure has no support in Nebraska law. Therefore, § 25-1708 provides no basis for taxing the costs of Jacob's transportation order to Schlichtman.
Although Jacob argues that § 25-1233 requires Schlichtman to pay for his transportation costs, § 25-1233 simply ensures that the Department of Correctional Services will be paid for the expense of transporting Jacob to trial, and does not address who, as between the parties to litigation, is responsible for Jacob's transportation *367 costs. Section 25-1233 provides as follows:
(1) A person confined in any prison in this state shall, by order of any court of record, be produced for oral examination in the county where he or she is imprisoned. In all other cases his or her examination must be by deposition.
(2) In civil matters, the court shall notify the Department of Correctional Services of any production order, in which a confined person is the subject, at least fifteen days before the required production. The court shall allow the department to present evidence relating to public safety and security concerns associated with the production of the confined person prior to the required production date. The party who moved for the production order shall be allowed to respond. Based on evidence presented, the court may rescind its production order. If the confined person is produced pursuant to court order, the party who moved for the production order shall pay to the department the actual cost of security and transportation arrangements incurred by the department related to such production.
Jacob claims that although he requested the transportation order, he should not be required to pay for the costs of his transportation, because he did not testify in his own behalf in his case; rather, it was Schlichtman who called him to testify in her case. However, the fact that Schlichtman took advantage of the fact that Jacob had arranged his presence in the courtroom and then called him as her witness does not change the fact that this statute merely ensures that the Department of Correctional Services is paid. The statute says nothing about who is ultimately responsible for such costs when the trial court gets to the point of taxing costs as between parties. As said above, the costs which Jacob seeks to impose on Schlichtman arise solely from the fact that he is a convicted felon and wanted to be physically present in courtwhich, given his status as a prisoner, involves extra expense only because of the crime he committed. It would be grossly unfair to impose those costs on Schlichtman. Thus, the trial court did not abuse its discretion in the taxation of costs.

Judgment Notwithstanding Verdict.
Jacob argues that the district court erred by sustaining Schlichtman's motion for judgment notwithstanding the verdict. We affirm the district court's decision, because the only competent evidence of the value of the life insurance policy is that it was worth $2,805.08 and there was no evidence that Schlichtman caused any deterioration in the value of the Legacy stock.
It is clear that the jury determined damages by adding the amounts that Schlichtman paid at auction for the insurance policy ($6,000) and stock ($6,000) to the amount that Schlichtman received when she cashed the insurance policy in ($2,805.08) to arrive at the total award of $14,805.08. However, this is not the proper measure of damages in a replevin action.
In replevin, damages for the detention of the property are recoverable only in case of a return. If the property is not returned, the measure of damages is the value of the property as proved, together with lawful interest thereon from the date of the unlawful taking. See Oak Creek Valley Bank v. Hudkins, 115 Neb. 628, 214 N.W. 68 (1927). The party recovering possession of the property is entitled to recover as damages any deterioration or depreciation in the value which has taken place during the wrongful detention. White Motor Credit Corp. v. Sapp Bros. Truck Plaza, Inc., 197 Neb. 421, 249 N.W.2d 489 (1977), overruled on other *368 grounds, United States Nat. Bank v. Atlas Auto Body, 214 Neb. 597, 335 N.W.2d 288 (1983). "It is fundamental that the plaintiff's burden to prove the nature and amount of damages cannot be sustained by evidence which is speculative and conjectural." Dawson v. Papio Nat. Resources Dist., 206 Neb. 225, 232, 292 N.W.2d 42, 47 (1980).
Here, the best evidence of the value of the life insurance policy is the amount it was cashed out for, $2,805.08. Jacob produced evidence that the death benefit of the insurance policy was $10,000, but this is not a measure of the life insurance policy's value on the date it was seized, but, rather, of the contractual death benefit. While the death benefit could possibly have some relationship to the policy's value on the date it was seized if it were combined with some type of expert testimony explaining that relationship, there was no such evidence. Further, the price paid for the policy at auction, $6,000, is also not necessarily evidence of the policy's value, because sale price is often not synonymous with actual value. See, Neill v. McGinn, 175 Neb. 369, 122 N.W.2d 65 (1963) (value of automobile could not be determined by its purchase price); Lancaster Cty. Bd. of Equal, v. Condev West, Inc., 7 Neb.App. 319, 581 N.W.2d 452 (1998) (value of real property could not be determined by its purchase price). But see Forney v. Box Butte Cty. Bd. of Equal, 7 Neb.App. 417, 582 N.W.2d 631 (1989) (purchase price of property may be taken into consideration in determining the actual value thereof for assessment purposes, together with all other relevant elements pertaining to such issue).
Fair market value is the price which property will bring when offered for sale upon the open market as between a willing seller and buyer, neither being obligated to buy or sell. Smith v. Papio-Missouri River NRD, 254 Neb. 405, 576 N.W.2d 797 (1998). Here, when the buyer holds a judgment against the property's owner for more than $700,000, and she is bidding against only the property owner's mother for the property, the sales price is simply not the fair market value of the property, remembering that Schlichtman ends up with the money she pays for the item attached and sold at auction. In short, what Schlichtman paid for the policy is not evidence of its fair market value.
The only evidence that establishes the value of Jacob's insurance policy at the time it was seized from him in 1989 is what its cash value was in 1992, $2,805.08. In short, the evidence before the jury would support only a finding that the policy's value was $2,805.08. Therefore, the district court correctly granted Schlichtman's motion for judgment notwithstanding the verdict with respect to the insurance policy, and we affirm that finding.
With regard to the stock, the shares were returned to Jacob, so he can recover damages only in the event that such shares deteriorated in value between the time they were taken from him and the time they were returned. While there is evidence that the stock deteriorated in value between the time it was seized and the time it was returned, "`the damages for detention must be such as grow out of the detention and are connected with or incident to the contest over possession.'" See Morfeld v. Bernstrauch, 216 Neb. 234, 241, 343 N.W.2d 880, 884 (1984). Here, there is no evidence upon which a jury could find that Schlichtman caused the deterioration of the stock's value or that such deterioration grew out of or was connected with the contest over its possession. Rather, the evidence strongly suggests, if not compels, the conclusion that the stock's value (whatever it was when attached, a matter upon which Jacob introduced no *369 evidence beyond the amount of Schlichtman's bid) was adversely affected by the fact that Jacob was the majority owner and principal employee of Legacy. Because there is no evidence that any deterioration in the value of the stock "grew out of the detention" by Schlichtman, Jacob cannot recover for such deterioration, and therefore the trial court properly granted Schlichtman's motion for judgment notwithstanding the verdict concerning the stock.

Would a Reasonable Person Have Concluded That the Trial Judge Was Biased?
Jacob claims that the trial judge took on a role of advocate for Schlichtman when, in an order ruling on a motion for summary judgment by Jacob, the judge wrote, "If Jacob consents, this court could find that the appropriate date from which to commence the interest is September 16, 1992 and the court would enter judgment in his favor in the amount of $2,805.08 with interest. ..." Jacob suggests this showed partiality on the part of the judge. However, we find that a reasonable person would not have concluded that the trial judge was biased because of this order.
The level of proof needed to establish that an arbitrator was biased was addressed in Dowd v. First Omaha Sec. Corp., 242 Neb. 347, 495 N.W.2d 36 (1993). The Dowd court established that the partiality of an arbitrator was established when a "`reasonable person would have to conclude that an arbitrator was partial to one party to the arbitration.'" 242 Neb. at 358, 495 N.W.2d at 43. The court rejected the notion that partiality could be proved by the mere "`appearance of bias'" and, instead, adopted the "reasonable person" test. Id. The court noted that judges and arbitrators were both subject to the same ethical standards and proceeded to address whether an arbitrator's failure to disclose a possible conflict of interest proved bias or prejudice against one party.
State v. Pattno, 254 Neb. 733, 739-40, 579 N.W.2d 503, 507-08 (1998), states:
The federal courts have consistently applied the standard that we adopted in Dowd for determination of whether a judge was biased against a defendant. Pursuant to 28 U.S.C. § 455(a) (1994), a judge shall be disqualified if a reasonable person who knew the circumstances of the case would question the judge's impartiality under an objective standard of reasonableness, even though no actual bias or prejudice was shown. See Renteria v. Schellpeper, 936 F.Supp. 691 (D.Neb.1996). ...
The reasonable person test adopted by this court in Dowd is a rational means of determining whether a judge is biased against a defendant.
Here, a reasonable person would not conclude that the trial judge was biased. It is clear from his order that he was simply attempting to facilitate a resolution of the proceedings and to avoid further proceedings, which only suggests an appropriate interest on his part in both the conservation of judicial resources and the timely resolution of the parties' disputes. Jacob's allegation of judicial bias is without merit.

Did District Court Err in Awarding Jacob Prejudgment Interest?
The district court correctly awarded prejudgment interest because Jacob's damages were determinable with reasonable certainty.
The general rule is that prejudgment interest may be recovered on claims that are liquidated. "`"A claim is liquidated if the evidence furnishes data which, if believed, makes it possible to *370 compute the amount with exactness, without reliance upon opinion or discretion."'" First Data Resources, Inc. v. Omaha Steaks Int., Inc., 209 Neb. 327, 335, 307 N.W.2d 790, 794 (1981). Where reasonable controversy exists as to the plaintiff's right to recover or as to the amount of such recovery, the claim is considered to be unliquidated and prejudgment interest is not allowed. Langel Chevrolet-Cadillac v. Midwest Bridge, 213 Neb. 283, 329 N.W.2d 97 (1983).
Schlichtman claims that the damages in this case were not liquidated, because they could not be computed with exactness; however, for the same reason that Schlichtman's motion for judgment notwithstanding the verdict was rightfully successfulbecause reasonable minds could arrive at only one conclusion regarding damages with respect to the insurance policyJacob's damages were liquidated on the policy. The only credible evidence of Jacob's damages is the cash value Schlichtman received for his life insurance policy. That amount was determinable with exactness, and Jacob's entitlement to damages was determined as a matter of law on a motion for summary judgment, a determination not challenged on appeal. Therefore, because liability was not in dispute, nor was the amount of damages on the life insurance policy, prejudgment interest was appropriate in this case.

CONCLUSION
For the reasons stated above, we affirm the decision of the district court.
AFFIRMED.